# THE WASHINGTON, ALEXANDRIA, & MT. VERNON RAILWAY COMPANY *v.* CHAPMAN.*

---

ELECTRIC RAILWAYS; PERSONAL INJURIES; CONTRIBUTORY NEGLIGENCE; STARE DECISIS; BURDEN OF PROOF.

1. It is not negligence *per se* for a passenger in a railway car, when it approaches a station, to leave his seat and go out of the door of the car, in order to alight when it stops. (Following *Metropolitan R. Co.* v.

---

*Carriers—Injury to Passenger.*—The authorities dealing with the liability of a railroad company for injuries to passengers in getting on and off railroad trains are collated and discussed in editorial note to *Carr* v. *Eel River & E. R. Co.* 21 L. R. A. 354.

*Snashall,* 3 App. D. C. 429; *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26.)

2. As a general proposition, a question of negligence is a question of fact, and must be submitted to the jury. (Following *Washington & G. R. Co.* v. *Grant,* 11 App. D. C. 107.)

3. Where a rule in a prior case has been stated by this court, which is applicable to the case under review, it should be followed, unless it be contrary to a ruling of the United States Supreme Court.

4. Although an instruction granted at the plaintiff's request, and comment thereon, may, when taken by themselves, be somewhat too favorable to the plaintiff, yet, when the charge as a whole is favorable to the defendant, and when the prayer and comment, taken in connection with the context, accurately state the law of the case, a verdict in favor of the plaintiff will not be disturbed. (Following *Lehman* v. *District of Columbia,* 19 App. D. C. 232.)

5. In order to make out a prima facie case, the burden of proof of negligence on the part of the defendant, as the cause of an injury, is upon the plaintiff; but this burden is changed, in the case of a passenger on a railway car, by showing that the accident which caused the injury occurred while the plaintiff was a passenger. The burden of proof is then cast upon the defendant to explain the cause of the accident, and to show, if that be the defense, that the plaintiff was negligent, and that his negligence caused, or contributed to the production of, the injury. (Following *City & Suburban R. Co.* v. *Svedborg,* 20 App. D. C. 543.)

No. 1567. Submitted December 14, 1905. Decided January 4, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action for personal injuries.                        *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. A. A. Hoehling, Jr.,* for the appellant.

*Mr. Hayden Johnson, Mr. J. McD. Carrington,* and *Mr. Campbell Carrington* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

This is an appeal from a judgment of the supreme court of the District of Columbia in an action brought by the appellee, Austin Chapman, against the appellant for personal injuries received by him while a passenger on appellant's train.

The declaration sets forth that the defendant, a corporate common carrier, operating an electric railway line between Washington and Alexandria, undertook to transport the plaintiff on the 11th day of December, 1902, from Alexandria to Addison, a station on its line, for a stated sum, and to stop its train at that station so as to enable him to safely alight; that, in pursuance of its undertaking, it became its duty to safely carry and land him at the agreed point; that, while said car was approaching said station and had sufficiently slowed down in its speed as to make it reasonably prudent, under all the circumstances, for plaintiff to leave his seat and go out upon the platform for the purpose of. alighting from said car as soon as the same should come to a full stop, the plaintiff arose from his seat in said car and went out upon the platform thereof for the purpose of alighting as aforesaid, but the defendant, its agents and employees, so negligently conducted and managed said car that, instead of coming to a full stop, as it should have done, it suddenly and with a violent lurch or jerk started forward at great speed, whereby the plaintiff, before he had made any attempt to alight, and without any negligence on his part, was violently thrown from said platform to the ground; and concludes with a statement of injuries received by him, including a broken leg, the expense to which he was put, and claims damages in the sum of $10,000.

This declaration was demurred to as bad in substance; the special grounds urged being that it affirmatively appeared that the claimed injury was caused by plaintiff's neglect and want of care; that it did not appear that the alleged injury was caused by any act of neglect of defendant; that it failed to set forth sufficient in law to charge defendant with any breach of duty, and that it failed to state a cause of action against defendant.

The demurrer was overruled.    As the failure to sustain the demurrer is set forth as the first error, it may be well to consider it at this time.    It is here urged that, though a plaintiff may aver that he was not guilty of contributory negligence, it will not avail him if the declaration show negligence; that the question of contributory negligence may be tested by demurrer to the declaration; and that passengers who voluntarily place themselves in dangerous positions must assume the attendant risks and danger.    Admitting the correctness of these propositions, it comes down to the single question whether the plaintiff's statement that, as the car was approaching the station and had slowed down so as to make it reasonably prudent for him to leave his seat and go out upon the platform for the purpose of alighting as soon as the car should come to a full stop [he did so], is an averment constituting an admission of contributory negligence sufficient on its face to bar a recovery.    It is contended by appellant that a passenger has no right to go upon the platform of a railway car while it is in motion.    The authorities cited by him to sustain the proposition are not in harmony with the decisions of this court, and are, in the main, overruled by later cases. *Metropolitan R. Co.* v. *Snashall,* 3 App. D. C. 429; *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26.    A well-known text writer has said:    "It is not negligent *per se* for a passenger to ride upon the platform of a railway car; nor    *    *    * for a passenger in a railway car, as it approaches a station, to leave his seat and go to the door of the car, in order to alight when it stops."    Beach, Contrib. Neg. 3d ed. secs. 149, 149A. The railways—and especially those using electricity as the motive power—permit passengers to ride on the platforms, and the "Step lively, please," of their conductors incites passengers to hasten to alight.    All is in keeping with the rush of modern life.    It is well settled in this jurisdiction that, "as a general proposition, a question of negligence is a question of fact, and must be submitted to the jury."    *Washington & G. R. Co.* v. *Grant,* 11 App. D. C. 107.    We do not think the declaration was demurrable on any of the grounds urged by appellant, and

that the case was one calling for evidence before plaintiff could be held to be guilty of contributory negligence.

After the demurrer was overruled, the defendant filed pleas to the declaration, and issue was joined. On the trial the plaintiff gave evidence tending to prove the material allegations of the declaration. It was to the effect that plaintiff, who had been employed for about fifteen months in the Potomac brickyard, situate between Addison and Arlington stations, took the defendant's 5:45 morning train on December 11, 1902, as was his habit. The conductor called out Addison station, but, the morning being dark, the plaintiff could not tell just where the train then was. He sat still until the conductor called out the station a second time. When the train apparently was about to come to a full stop, he left his seat, which was at the rear end of the trailer, and stepped out on the platform. The train, instead of stopping, made a lurch and threw the plaintiff. Two witnesses corroborated plaintiff as to the action of the train. One who had stepped out on the platform thus described it: "The passengers were all getting ready to go out, and the train made a crush backwards and threw me from my balance. * * * I don't know whether the other man [the plaintiff] recovered himself or went over; I didn't see him." The other witness, after stating that after the conductor's second call the passengers rose up to get off, said, "When the last call was made it [the train] began to slow down, and before the time I raised up and started to the door it made a sudden lunge and crushed right off, and threw me off my balance." This evidence was in harmony with the declaration, and, in the absence of any evidence on behalf of defendant, was sufficient proof of defendant's negligence and plaintiff's freedom from any contributing negligence to require the submission of the case to the jury. In the class of cases to which the one at bar belongs the decisions of our courts are not entirely in harmony, and it serves no useful purpose to attempt to reconcile them, or to review them at length. Where a rule in a prior case has been stated by this court, which is applicable to a case under review, it should be followed unless it be contrary to a ruling of the United States Supreme Court. In *Harbison*

*v. Metropolitan R. Co.* 9 App. D. C. 60, 69, this court said: "The true rule surely must be that, whilst a passenger may ride on the platform, step, or footboard of a car, with the express or implied consent of the carrier, without incurring the imputation of contributory negligence as matter of law, he thereby, however, assumes the increased risk that may result therefrom in the ordinary course of things when the car is properly driven or managed. If hurt during the period of this exposure, he must, in order to recover, show affirmatively that the accident was caused in whole or in part by some negligent act of the carrier." The plaintiff's evidence was sufficient to bring his case within this rule, and more than sufficient, we think, for he was not riding on the platform, but went on it for the purpose of alighting at his station.

After the plaintiff rested, the defendant called witnesses who contradicted the testimony given by plaintiff and his witnesses. The conductor testified that when that train passed Addison it did not slow up, and that it was going at a speed of 25 to 30 miles an hour. He heard a passenger say the train was not going to stop at Addison, and he then went forward to see why it had not stopped, as he had told the trolley man to stop there. He admits that he had tickets for Addison and would have stopped had the bell not been out of order. The trolley man admits that during the two months he was so employed the train stopped at Addison every morning. All three of the defendant's employees who were on the train that morning deny with more or less positiveness that there was any lurch of the car, as stated by plaintiff and his witnesses. It is unnecessary to detail the testimony at length. On all material points there was conflicting testimony. Evidence was given tending to show that some of the witnesses had made statements contrary to the evidence given on the trial, and the reputation of one witness for truth and veracity was attacked. In view of the testimony the case was one to be submitted to the jury, and no error was committed by the trial judge in refusing defendant's motion to instruct the jury to return a verdict for the defendant. Upon the refusal of this motion various prayers were submitted to the court, the only ones re-

maining to be considered being plaintiff's first prayer and defendant's sixth prayer, which are as follows:

I. The jury are instructed that, if they find from the evidence that the defendant company was a common carrier of passengers, and that the plaintiff was a passenger on one of defendant's cars, and, while a passenger on board of said car, was injured, then, to relieve itself from liability for such injury, the burden of proof is on the defendant, if its defense be contributory negligence, to show that the plaintiff was negligent, and that his negligence caused or contributed to the production of the injury.

VI. The jury are instructed that, in this case, no presumption of negligence on the part of the defendant can be indulged in from the mere happening of the accident and the receiving of an injury by plaintiff.

The court granted the former and denied the latter, and to both of these rulings counsel for defendant duly excepted. These rulings are assigned as error, as also is the following, contained in the general charge:

"That is to say, if you find from the evidence in this case that the plaintiff was riding on this car, and, while he was a passenger, he was injured, then that would establish a prima facie case; that is to say, he has established the fact of the injuries, and that it was not through his fault that he was injured, and that he was a passenger on the car, and while a passenger on that car he was injured. Then the burden of proof shifts. Then it becomes necessary for the defendant to show you by a fair preponderance of the testimony that his injury was caused by his own negligence."

This statement was made by the court in explanation of plaintiff's first prayer, which was granted and was as above quoted.

While it may be that the prayer, and comment thereon, may, when taken by themselves, be somewhat too favorable to the plaintiff, we think that the charge of the court, as a whole, was, if anything, more favorable to the defendant than it had the right to claim, and that, when the prayer and comment are "taken in connection with the context," they accurately state

the law of the case. *Lehman* v. *District of Columbia,* 19 App. D. C. 232. We find these qualifying and explanatory statements in the charge:

"The case you are trying here is, Did the defendant company so conduct its trains as that it produced a lurch by which the defendant was thrown from the car and injured? Now, that is the contention of the plaintiff. And the prayer of the plaintiff in that respect is as follows:" [The court at this point read the prayer complained of.]

Again, the court said:

"Now, that simply means this, gentlemen, that if you believe from the evidence in this case that this train was slowing up and about to stop at Addison, and that, whilst it was in that condition, the plaintiff got up and walked out on the platform preparatory to getting off, and it then suddenly gave a lurch and started off rapidly, by which he was thrown and injured; and you further find that he used such ordinary caution and prudence as a reasonable man would have used in going out there, in regard to his safety,—then the plaintiff is entitled to recover.

"Now, I wish to read to you, in connection with that, another prayer. It puts it upon a different basis.

"Now, you are instructed that, if you shall find upon the occasion in question that the plaintiff went upon the platform of defendant's car, and at the time of so doing said train was not slowing up, but was in motion and proceeding on its way from Addison station to Arlington junction, and that, while plaintiff was so upon said platform, the speed of the train was changed, and that any jolt or jar occurred by reason thereof, and by reason thereof plaintiff was thrown or fell from the platform and was injured, nevertheless, plaintiff would not be entitled to recover unless the jury shall further find that defendant had knowledge of the exposed position of plaintiff at the time, and had time and opportunity to prevent injury to him, and that, instead of so doing, it caused the accident and injury by changing the speed of said train.

"Now, taking these two prayers together, you will see that

they proceed upon different theories.    If you find from the evidence in this case that the train was slowing up and about to stop at Addison, and that the plaintiff got up from his seat and went out on the platform expecting to get off, and then there was a sudden start and a lurch produced by that, through which the plaintiff was thrown of while he was reasonably careful and prudent in his actions, then, if he was hurt in that way, the plaintiff is entitled to recover in this action.    If, on the other hand, you find from the evidence in this case that the train was not slowing up at Addison and about to stop, but was in motion on its way from Addison to Arlington, and that thereupon, whilst that was going on, the plaintiff went out on the platform, and then, by a sudden lurch produced by the quickening speed of the train, the plaintiff was thrown off, he would not be entitled to recover, unless you should further find from the evidence in the case that the defendant company had notice of this dangerous place where he was, and would have had time to prevent it after they had that knowledge.

"So, you see the different theories upon which these prayers go.    In one case it was slowing up and about to stop, and then, under the circumstances which I have given you, if you find he was hurt, he is entitled to recover.    But if it was not slowing up, but in motion, on its way to Arlington junction, and he was then thrown off by a lurch, by reason of the increased speed, he would not be entitled to recover, provided the defendant company did not have notice that he was there in time to have prevented the injury."

And again:

"The jury are further instructed that, in any event, the plaintiff cannot recover herein unless they shall find that he was thrown or fell from the platform of defendant's car by a sudden or violent lurch or jerk of the car, and that he was thereby injured, as alleged by him in his declaration; and, if the jury shall find that plaintiff stepped or jumped from said platform or car, and that he was thereby injured, or that the accident happened in any other manner or way than that alleged by him in

said declaration, he cannot recover in this action, and their verdict must be for the defendant."

Furthermore, we think the court was warranted in granting the prayer complained of, and, in his comments following it, in view of *City & Suburban R. Co.* v. *Svedborg,* 20 App. D. C. 543. In the opinion in that case, which was written by Mr. Chief Justice Alvey, it was said at page 549: "It is true, to make out a prima facie case, the burden of proof of negligence on the part of the defendant, as the cause of the injury, was upon the plaintiff, but this burden is changed, in the case of a passenger, by showing that the accident occurred that caused the injury to the plaintiff, while the latter was a passenger. The burden of proof is then cast upon the defendant to explain the cause of the accident, and to show, if that be the defense, that the plaintiff was negligent, and that her negligence caused, or contributed to the production of, the injury."

In *Gleeson* v. *Virginia Midland R. Co.* 140 U. S. 435, 35 L. ed. 458, 11 Sup. Ct. Rep. 859, the court, at page 443, at page 463, 35 L. ed., and at page 862, 11 Sup. Ct. Rep., said: "Since the decisions in *Stokes* v. *Saltonstall,* 13 Pet. 181, 10 L. ed. 115, and *New Jersey R. & Transp. Co.* v. *Pollard,* 22 Wall. 341, 22 L. ed. 877, it has been settled law in this court that the happening of an injurious accident is in passenger cases prima facie evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight." To the same effect, *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551, 35 L. ed. 270, 11 Sup. Ct. Rep. 653.

Our conclusion is that it was not error to overrule the demurrer, nor to submit the case to the jury, and that the prayers, taken in connection with the whole charge, were correctly passed upon, and that the whole charge is a just and fair statement of the law of the case.

There being no error in the judgment below, it follows that it must be affirmed, with costs.                    *Affirmed.*