# CHARLESTON.

## Hodge v. Sycamore Coal Co.

Submitted March 5, 1918.    Decided March 19, 1918.

1. CARRIER—"*Passenger*"—*Relation—Care Required.*

A person, riding gratuitously on a truck or hand car, maintained and operated by a coal mining company to haul its express matter over a spur track of a railway company, leading from the main line to its coal mine, with the consent of its general manager having control of the operation of such car, is a passenger and not a trespasser or mere licensee, and such company owes him the duty to use reasonable care for his safety. (p. 107).

2. SAME—*Passengers—Assumption of Risk.*

A person who rides on a vehicle not designed for carrying passengers assumes only such risks as are incident to the particular mode of conveyance. (p. 107).

3. SAME—*Passenger—Care Required—Payment of Fare.*

A person riding on another's vehicle with his consent is entitled to the protection of a passenger, even though he has paid no fare. (p. 107).

4. SAME—*Passengers—Negligence—Res Ipsa Loquitur.*

Collision of such truck with a train of the railway company is prima facie proof of negligence, and, if not rebutted, justifies a verdict. To such an accident the maxim *res ipsa loquitur* applies. (p. 109).

5. SAME—*Passenger—Contributory Negligence.*

Plaintiff is not guilty of negligence in riding on a truck unprovided with seats or rails, when it appears that a collision of the truck with a train of cars was the only proximate cause of his injury. (p. 109).

Error to Circuit Court, Mingo County.

Action by Eliza Hodge against the Sycamore Coal Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*S. D. Stokes* and *W. H. Bronson*, for plaintiff in error.

*Russell S. Ritz*, for defendant in error.

WILLIAMS, JUDGE:

Plaintiff recovered judgment for a personal injury caused by a collision of defendant's hand car or truck, on which she was riding, with a train of cars, and defendant prosecutes this writ of error.

Defendant is a coal mining corporation operating a mine on Sycamore Creek, a tributary of Tug River, in Mingo county. A spur track extends from the main line of the Norfolk & Western Railway near the mouth of Sycamore Creek, up said creek for a distance of about two miles, and is used by the railway company in hauling the coal from defendant's mine. No passenger cars are run over this spur track. By permission of the railway company defendant used a hand car or truck for the purpose of hauling its express matter from the junction with the main line to its mine. The truck had four wheels, was about thirty inches high, with a flat top, six by eight feet, without seats for the accommodation of passengers and without railing on the sides. It was down grade from the mine to the junction and the car was run down by gravity and hauled back to the mine by a mule. It made two regular trips a week. On the morning of August 17, 1915, plaintiff, her mother and a number of other persons were riding on the truck down the grade when it collided with a train of empty coal cars being pushed up to the mine by an engine in charge of the railway company's employes, and plaintiff was injured.

The defenses to the action are (1) that plaintiff was not a passenger but was merely a trespasser or, at most, only a licensee, and defendant owed her no duty other than not to wilfully injure her; and (2) that, if the relation of carrier and passenger did in fact exist, then defendant was only a private carrier, and was not bound to that high degree of care which the law requires of public carriers, but was bound to use only ordinary or reasonable care, and the evidence does not prove plaintiff's injury was due to a lack of such care.

Respecting the relationship, plaintiff does not contend defendant was a common or public carrier, but does strenuously insist the evidence proves it was a private carrier. There is no evidence that defendant sold tickets or collected fares from

persons riding on its truck, but there is ample evidence to establish a general custom of riding on the hand car or truck which existed at the time of the accident and had existed for some time prior thereto, and that this was known to defendant through its general manager and general superintendent. Mr. Patterson, the general manager, admitted he frequently saw persons riding on the car and never objected, and, if he was present, he permitted them to ride, and never at any time forbade anyone the privilege of riding on the car. The testimony of Mr. Thomas, defendant's general superintendent of the mine, is of like import. He admits the custom, and says he thinks it had prevailed for a period of two years. Plaintiff testified she saw Mr. Thomas the evening before the accident and he then agreed with her to transport her and her mother to the junction on the morning of August 17th, in time to catch the morning train on the main line, and told her he would have the man in charge of the car to stop for them. This testimony is not denied. There is no evidence that any fare was charged or agreed to be paid for their transportation, and in fact none was paid. Archie Eldridge, the man who ran the truck, was under the direction of Mr. Thomas, and he admits he was ordered by Mr. Thomas to take the car down to the junction that morning to get some express, but, because of objection by plaintiff, was not permitted to answer whether or not he was ordered by Mr. Thomas to take some passengers down to the station that morning. He stated, however, that he stopped his car a short distance from the mine and took on plaintiff and some other persons. These facts and circumstances establish between plaintiff and defendant the relation of passenger and private carrier, and defendant was bound to exercise such reasonable care for plaintiff's safety as is usually employed by prudent persons engaged in the same business, or business similar in character. *Shoemaker* v. *Kingsbury*, 12 Wall. 369, 20 L. Ed. 432; and 4 R. C. L., Sec. 593. The truck was not designed for the accommodation of passengers and defendant did not solicit their patronage or hold itself out as a public carrier, and plaintiff assumed the ordinary risks incident to the mode of travel. *Shoemaker* v. *Kingsbury, supra;* and *Files* v. *Boston & Albany R. Co.,* 149

Mass. 204, 14 Am. St. Rep. 411. Even if no express agreement by the superintendent to carry her were proven, plaintiff could not be regarded as a trespasser or mere licensee in view of other facts and circumstances clearly proven. Defendant, through its acting agents, knew of the prevailing custom of carrying passengers to and from the junction, and there is no evidence of any rule of the company forbidding the practice. The existence of the custom, with knowledge thereof by defendant and no rule forbidding the practice, is sufficient to establish the relation of carrier and passenger. However, it is not denied that plaintiff was being carried pursuant to an understanding or agreement had with defendant's general superintendent the evening before the accident. Payment of fare or an agreement for compensation was not necessary in order to constitute plaintiff a passenger. We held in *Harris, Admr.* v. *City & Elm Grove Ry. Co.,* 69 W. Va. 65, that a person, even though an employe of defendant, while riding on a free pass about his own business, was entitled to the rights of a passenger, and was not a fellow servant of the motorman whose negligence caused his injury. In support of the proposition that plaintiff was a passenger, see also the following authorities: *Simmons* v. *Oregon R. R. Co.,* 69 Pac. 440, and again at page 1022, denying a rehearing; *Todd* v. *Old Colony & Fall River Co.,* 3 Allen 18; 4 R. C. L., Sec. 475; *Wagner* v. *Mo. Pac. R. Co.,* (Mo.), 3 L. R. A. 156; and *Whitehead* v. *St. Louis &c. R. R. Co.,* (Mo.), 6 L. R. A. 409.

Defendant insists the happening of the collision is the only evidence of negligence, and that alone is not sufficient to prove it. It is unquestionably the rule, applied in case of a public carrier, that a collision or derailment of its train *prima facie* proves negligence and, if unexplained, is conclusive. No good reason is perceived for applying a different rule of evidence in the case of a train or car operated by a private carrier. A collision, in either case, is not one of those incidents which is liable to happen if proper care is observed. In fact, such an accident is generally so disastrous in its consequences and happens so infrequently, that negligence is necessarily presumed to be the cause. The doctrine or maxim *res ipsa loquitur* is applied to such an accident.

*Harvey* v. *Deep River Logging Co.,* 50 Pac. 501; 12 L. R. A. (N. S.) 131, was a case very similar in character to the case under consideration. A lumber company operated a private railroad between a landing on Deep River and its logging camp, a distance of about four miles. It provided no cars for carrying passengers, but permitted persons to ride gratuitously on its flat top logging cars or trucks, to and fro, over its tracks, and Harvey was injured by being thrown from the car on which he was riding by permission of the engineer, in consequence of a collision with another train. The supreme court of Oregon there held that he was entitled to recover; that he did not assume the risk of a collision; and that the lumber company owed him the duty of not injuring him by its negligence. The same principles were likewise applied, under a similar state of circumstances, in *Albion Lumber Co.* v. *De Nobra,* 72 Fed. 739. The injury in that case, however, was caused by the derailment of the logging train on which the plaintiff was riding, by permission of defendant and without payment of fare. In discussing an instruction which the trial court had given to the jury, in effect, telling them that if they found the derailment of the train was due to the gross negligence of defendant's servants in running it at too great a speed they should find for plaintiff, otherwise to find for the defendant. Speaking through Judge Gilbert of the Circuit Court of Appeals of the Ninth Circuit, the court said: "Notwithstanding the fact that the deceased was on the defendant's train upon the defendant's invitation, and not as a passenger for hire, the defendant owed him proper and adequate care under the circumstances. The instruction required the jury to find the existence of gross negligence on the part of the defendant before the plaintiff could recover. In that respect it was perhaps more favorable to the defendant than the law justifies, but of that the defendant cannot complain."

In *Whitehead* v. *St. Louis &c. R. Co.,* 6 L. R. A. 409, the supreme court of Missouri held, that plaintiff was entitled to recover for an injury received by the collision of a freight train on which he was riding by permission of the conductor without payment of fare, although the conductor violated the

rules of the company in permitting plaintiff to ride. A sleeping car had been left on the track at the foot of a long grade, down which the freight train was running, and defendant's servants who placed the coach on the track knew of the approaching freight train, and knew that it was liable to be broken in two and, therefore, would not be under complete control, and, knowing these things, their failure to signal the oncoming freight in time to prevent the accident, when it appeared they could have done so, was held to be negligence for which defendant was liable. In addition to the cases previously cited, see the following: *Chattanooga Rapid Transit Co.* v. *Venable,* 105 Tenn. 460, 51 L. R. A 886; *St. Joseph &c. Ry. Co.* v. *Wheeler,* (Kan.), 10 Pac. 461; and *McVeety* v. *St. Paul &c. Ry. Co.,* 45 Minn. 268, 22 Am. St. Rep. 728.

The presumption of negligence arising out of the happening of the collision is not rebutted or explained and, therefore, conclusively proves defendant's negligence. Still other circumstances shown to exist strengthen this view of the case. Defendant maintained a telephone line connecting its mine with the junction. The morning of the accident it was very foggy. Eldridge, who ran the car, testified he had to leave the mine before half past five o'clock in the morning, and the telephone was located in the store, which was locked up at that hour, and he could not get to the telephone to ascertain whether a train was coming up to the mine. The omission to ascertain that fact before starting is additional evidence tending to prove negligence.

In view of the questions already passed upon it is unnecessary to enter upon a lengthy discussion of the assignments relating to instructions. Plaintiff's instruction correctly informed the jury concerning the law which we have found to be applicable to the case.

Defendant's instruction No. 1, being a peremptory one, was properly refused. Its No. 2 was given. Its Nos. 3 and 6 are framed on the theory that the relation of carrier and passenger did not exist, unless the jury believed defendant carried passengers for hire, and were properly refused. Its No. 4 is without evidence to support it; there is no evidence that

plaintiff was a mere trespasser. Its No. 5 was given, and was as favorable to defendant as it had any right to ask, under the circumstances of the case. Its No. 7, as originally drawn, refers to No. 6 for the definition of a passenger, and thereby would make it depend upon the existence of a contract based on a consideration, and was therefore properly refused. But as modified by the court, and given after such modification, the instruction presents defendant's defense upon the only proper theory warranted by the facts in the case, and was as favorable to defendant as it could reasonably ask. Its No. 8 related to contributory negligence, and was not based on any evidence, and, therefore, was properly refused. It cannot be said that plaintiff's riding on the truck, even though it was unprovided with seats or railing, was negligence per se; that had nothing to do with the proximate cause of her injury; her riding on the car did not cause the collision. Plaintiff assumed only such risks as were incident to that mode of travel, such, for instance, as being jostled off the car by reason of an uneven track, or passing around a sharp curve. A collision is not an incident to be reasonably expected while riding in any kind of car on a railroad track, if proper care is used by those in charge of the car. Therefore, this instruction was likewise properly refused. The judgment is affirmed.

*Affirmed.*