[Sac. No. 3902. In Bank.—March 1, 1928.]

BELFIELD BROWN, Appellant, v. THE FEATHER RIVER LUMBER COMPANY (a Corporation), Respondent.

494

Wm. C. Ring and Faucett & Ring for Appellant.

L. H. Hughes and McLaughlin & McLaughlin for Respondent.

PRESTON, J.—Plaintiff sues defendant for the death of his son, a minor of the age of eighteen years, basing his cause of action upon allegations of negligence with respect to the management and operation of a logging railroad upon which deceased was riding at the time of his death. We are here concerned solely with the sufficiency as a pleading of the second amended complaint, to which the court below sustained a demurrer without leave to amend. Said second amended complaint, hereinafter referred to as "complaint," alleges:

"That on the 28th day of May, 1922, and long prior thereto, at the county of Plumas, state of California, defendant was engaged in the business of cutting timber and manufacturing lumber and in this connection, was operating a saw mill and railroad, which said railroad was used by said defendant to haul or convey timber to said mill by means of a locomotive or engine, together with railroad cars, operated on said railroad.

"Said defendant maintained a camp, or small town, wherein employees working at said lumber business resided.

"That on said 28th day of May, 1922, and long prior thereto, those residing in said camp or town were permitted by the defendant's agents and servants, to-wit, defendant's conductors in charge of and operating said train, to ride upon said train, as convenience in going up and down said tracks, and were so permitted to ride without hire.

"That defendant's said conductor's acts and conduct in permitting those residing in said camp or town to ride on said trains, as aforesaid, was well known to defendant's managing agents and superintendent, and said managing agents and superintendent ratified said act and conduct of

defendant's said conductors in permitting those living in said camp or town to ride upon said trains, as aforesaid, and acquiesced therein.

"That on or about said 28th day of May, 1922, one Delmar Brown, a minor of the age of eighteen years, the son of the plaintiff herein, was residing at said camp or town so maintained by said defendant and was an employee of said defendant, although said Delmar Brown, deceased, was not engaged in work on said 28th day of May, 1922, nor engaged in any line or scope of employment of defendant, but was walking along said track or railroad in pursuit of his own recreation or pleasure, and had reached a point about five (5) miles distant from said camp or town, at which said time and place defendant's said train was standing on its said railroad and was about to start up and proceed down said track in the direction of said camp or town, whereupon defendant's conductor in charge of and operating said train, while acting in the line and scope of his authority, invited said deceased to board said train for the purpose of riding down to said camp or town and directed the deceased to take a position on the rear of the tender of said engine of said train, pursuant to which directions of said conductor deceased took a position on the rear of said tender. Defendant's said engine was so connected with said train of cars as to be moving or proceeding backward in such manner as to place said tender in front of said engine and train, and the portion of said tender upon which deceased was riding under the direction of said conductor was directly in front of said moving train as it proceeded in the manner above alleged.

"Immediately after said deceased had taken his said position on said tender, said train started up and proceeded down said track to a point about three and one-half (3½) miles from said camp or town and while rounding a curve on said railroad said engine ran off of said railroad and plunged down an embankment, whereupon deceased was hurled from said tender to the ground and instantly killed.

"Said deceased was a good and dutiful son, and with the exception of the short space of about two weeks, at which time said deceased was residing in defendant's camp

or town, was residing with the plaintiff herein, at Lindsay, California. . . .

"The roadbed from the point where said deceased boarded said train to the point of its destination, to-wit, said camp or town, was soft, uneven and unsecure; the iron track or rails along said roadbed and over which said train was passing on its way to said camp or town were loose and unsecure; the ties upon which said rails or track were laid were broken, weak and unsecure and the rails were not securely fastened thereto and the train, while passing over and along said track, was liable to be overturned or derailed and the position occupied by the deceased at said time was a position of great danger and peril, all of which was known to defendant.

"Deceased was not familiar with said roadbed and the danger attending his position upon said tender and at the time the deceased believed his said position was a safe place to ride.

"That all of said injuries and damage aforesaid were caused by and were an approximate consequence of the negligence of defendant's said conductor in placing said deceased on the tender of said engine and starting and operating said train along said track while said plaintiff was occupying said position."

Count two of the complaint is predicated upon an allegation that the negligence pleaded in count one was wilful and wanton, and count three upon an allegation of wilful and wanton negligence in permitting the deceased to occupy a position on the tender of the engine of defendant's train.

It will thus be readily seen that the pleading before us presents the complex question of determining whether under the allegations thereof, deceased was a passenger, invitee (express or implied), licensee, or trespasser upon defendant's logging train. It is clear that defendant was not at the time a common carrier of passengers in the ordinary acceptation of that term. It clearly appears also that enough is alleged to raise an issue of fact for the jury as to whether or not deceased was an implied invitee of defendant. In other words, the allegations to the effect that the conductors of defendant railroad were in the habit of permitting persons to ride upon the trains as a conveni-

ence in going up and down said tracks, and that such acts and conduct on their part were known to the managing agents of defendant, and that the conductor acting in the course of his authority expressly invited deceased to ride on said train, were sufficient to submit to the jury the question as to whether said managing agents of defendant had not expressly authorized or ratified the conduct of its said conductor in extending said invitation to deceased. Apparently the pleader in this case had studied closely the principles of law governing the situation, and the complaint was drawn by him in the light of these authorities.

After a careful review of the authorities, many of which are not cited in the briefs, we hold that the principles announced in the case of *Lawrence* v. *Kaul Lumber Co.*, 171 Ala. 300 [55 South. 111], are applicable here. Inasmuch as that case is practically a parallel of the case at bar and discusses all principles here involved, we shall quote from it at length. Defendant there, as here, was not a common carrier of passengers, but had built and was operating from its logging camp to the main line a short railroad designed for use in its logging and lumber business. A custom had arisen of allowing its hands and employees to ride to and fro on its freight trains for their own convenience, which permission in time was extended apparently to all persons who sought the privilege. Deceased had been hired by defendant to cut ties on its lands at so much a tie and at his discretion. While riding on a logging train, following the above custom, he was killed by derailment of the train on account of the condition of the roadbed. In considering the various rulings on demurrers to the complaint and pleas, the court said:

"To constitute one a 'passenger' who is riding on a train, it is well settled that it is not necessary that the carrier should be a common carrier, nor that the train or car should be used or adapted primarily for carrying passengers. (*Birmingham R., L. & P. Co.* v. *Adams,* 146 Ala. 267, 272 [119 Am. St. Rep. 27, 40 South. 385].) It is also well settled that the person transported is none the less a passenger, because he pays nothing for his carriage, or because he rides for his own convenience solely, by the courtesy of, and absolutely without profit to, the carrier. (5

A. & E. Ency. Law, 507; 1 Ann. Cas. 451, note; *Indiana Traction Co.* v. *Klentschy*, 167 Ind. 598 [10 Ann. Cas. 869, 79 N. E. 908]; *Harvey* v. *Deep River Logging Co.* (1907), 49 Or. 583 [12 L. R. A. (N. S.) 131, 90 Pac. 501].) The essential requirements seems to be only that the passenger is accepted as such—that is, for transportation by the carrier; the trust and confidence thereby induced, on consideration of public policy, imposing upon the carrier the duty to reasonably safeguard, and not negligently injure, the person so carried. In some of its applications, this rule is undoubtedly a harsh one, and the results sometimes seem scarcely consistent with reason and justice.

■ "When, however, the passenger chooses to be transported on a train, not adapted to passenger service, such as a freight or a logging train, while he does not waive the carrier's duty of due care with respect to his safety, he does waive all such precautions, whether in equipment or operation, which are inconsistent with the ordinary use and conduct of such a train, and cannot expect the carrier to change or adapt his service to the extraordinary requirements of a common carrier of passengers. In other words, he assumes the risk of injury from such accidents as are incident to such trains when equipped and operated in the usual way. (*Southern Ry. Co.* v. *Crowder*, 130 Ala. 256, 263 [30 South. 592]; *Harvey* v. *Deep River Logging Co.*, 49 Or. 583 [12 L. R. A. (N. S.) 131, 90 Pac. 501].)

"But, if the carrier is not a common carrier of passengers and has not expressly contracted to carry in the particular case, a person entering upon its train and taking passage thereon might be, under various circumstances, either a passenger, a licensee, or a trespasser. If his presence is without the knowledge and consent of anyone in charge of the train, he is but a trespasser. If on the invitation, or with the knowledge and acquiescence, of such an agent, not authorized nor shared in by his principal—the carrier itself, or its *alter ego*—such person would be but a licensee. (*McCauley* v. *Tennessee Coal etc. Co.*, 93 Ala. 360 [9 South. 611]; *Files* v. *Boston etc. R. Co.*, 149 Mass. 204 [14 Am. St. Rep. 411, 21 N. E. 311].) If on the invitation, express or implied, of the carrier or its *alter ego* manager, or of any authorized agent, such person would be a passenger. (Id.;

*Harvey* v. *Deep River Logging Co.* (1907), 49 Or. 583 [12 L. R. A. (N. S.) 131, 90 Pac. 501].) . . .

"It is to be noted that 'invitation,' in the sense in which it is here used in these pleas, and as commonly used and defined by law writers in this connection, is a term of considerable breadth, and includes, not only express invitation, but the invitation that may be implied from custom, usage, or conduct on the part of the carrier, or of its servants, if notorious or actually known to the carrier or its *alter ego.* (*Alabama Great So. Ry. Co.* v. *Godfrey,* 156 Ala. 202, 218 [130 Am. St. Rep. 76, 47 South. 185] ; *Brown* v. *Scarboro,* 97 Ala. 316, 322, 323 [12 South. 289].) Upon this question of implied invitation, based on the known custom or usage of the defendants or its agents, much pertinent testimony was introduced on the trial, and this issue as made by the pleadings was one of fact for the jury to determine."

A case also in point is *Harvey* v. *Deep River Logging Co.,* 49 Or. 583 [12 L. R. A. (N. S.) 131, 90 Pac. 501], cited in the above quotations. There defendant, engaged in the logging business, operated, as part of its appliances, a logging steam railroad, but it was not engaged in the passenger business and neither charged nor received fares of persons carried. Yet the court held that if the carriage of a person on one of its trucks was with its implied consent, which might be found from evidence tending to show not only that defendant's manager had actual knowledge that the persons in charge of its trains were in the habit of permitting persons to ride thereon, but also that such practice was so open, notorious, and continuous that it was hardly probable that it could have been without his knowledge, defendant owed him the duty of not injuring him by its negligence, and so was liable for his injury from collision of the train with another train negligently permitted on the road at the time.

In the case of *Hodge* v. *Sycamore Coal Co.,* 82 W. Va. 106 [95 S. E. 808], plaintiff was riding gratuitously on a truck or handcar maintained and operated by defendant coal mining company to haul its express matter over a spur-track of a railway company, leading from the main line to its coal mine, with the consent of its general manager having control of the operation of such car. The court held that

she was a passenger and not a trespasser or mere licensee, and that such company owed her the duty to use reasonable care for her safety, and affirmed the judgment awarding her damages for a personal injury caused by collision of defendant's said handcar or truck on which she was riding with a train of cars. The court said: "These facts and circumstances establish between plaintiff and defendant the relation of passenger and private carrier, and defendant was bound to exercise such reasonable care for plaintiff's safety as is usually employed by prudent persons engaged in the same business, or business similar in character. (*Shoemaker* v. *Kingsbury*, 12 Wall. (U. S.) 369 [20 L. Ed. 432, see, also, Rose's U. S. Notes], and 4 R. C. L., sec. 593.) The truck was not designed for the accommodation of passengers, and defendant did not solicit their patronage or hold itself out as a public carrier, and plaintiff assumed the ordinary risks incident to the mode of travel. . . . Even if no express agreement by the superintendent to carry her was proven, plaintiff could not be regarded as a trespasser or mere licensee in view of other facts and circumstances clearly proven. Defendant, thru its acting agents, knew of the prevailing custom of carrying passengers to and from the junction, and there is no evidence of any rule of the company forbidding the practice. The existence of the custom, with knowledge thereof by defendant and no rule forbidding the practice, is sufficient to establish the relation of carrier and passenger. However, it is not denied that plaintiff was being carried pursuant to an understanding or agreement had with defendant's general superintendent the evening before the accident. Payment of fare or an agreement for compensation was not necessary in order to constitute plaintiff a passenger."

A case very similar and to the same effect is *Whitehead* v. *St. Louis etc. Ry. Co.*, 99 Mo. 363 [6 L. R. A. 409, 11 S. W. 751]. See, also, a case similar in fact and holdings which arose in California, *Albion Lbr. Co.* v. *De Nobra*, 72 Fed. 739, 741. Many other cases could be cited supporting these views. Measuring the complaint in this action by the principles above announced, there can be no question that count one states a cause of action which, if sustained by the evidence, would warrant a jury in finding that deceased

was on defendant's train as an invitee and not as a licensee or trespasser.

The case of *Campbell* v. *Duluth & Northeastern etc. Co.*, 107 Minn. 358 [22 L. R. A. (N. S.) 190, 120 N. W. 375], relied upon by respondent, is not at variance with the principles hereinabove announced. In fact, it is in complete harmony with them, to this effect: "All that is required of such roads is the exercise of the highest care. under the circumstances. The passenger must take such roads as he finds them. A carrier having limited fitness and capacity to transport passengers, and whose primary business is to transport its logs, is not held to the standard of perfection of an ideal road, but must exercise the highest degree of care practicable under the circumstances." The complaint in this action alleges that the defendant did not exercise the care that it should have exercised under the particular circumstances.

*Purple* v. *Union Pacific R. Co.*, 114 Fed. 123 [57 L. R. A. 700], and cases of that type are not in point because there plaintiff was riding on a train prohibited from carrying passengers by the rules of the company, and plaintiff knew or should have known of such rules. We have no such state of facts before us. The case of *LeMasters* v. *Southern Pacific Co.*, 131 Cal. 105 [63 Pac. 128], is not applicable for the same reason, for there "it was against the rules of defendant for persons to ride upon this board, and deceased was acquainted with that fact."

While deceased, if an invitee, was only entitled to the degree of care commensurate with the character of the railroad train on which he was riding, nevertheless, there is no allegation of the complaint from which contributory negligence as a matter of law appears. It does not appear that the position assumed by the deceased was necessarily more hazardous than other places on the train, nor that the assumption of this position, as distinguished from any .other position he might have taken, in any way specially contributed to the accident. Nor does it appear that the assumption of this position at the invitation of the conductor was in excess of the conductor's express and implied authority. The most that can be said is that in accepting an invitation to ride upon said train he knew or should have

known of the differences between such transportation and the ordinary passenger train, and the duty of defendant would thereby be correspondingly less. But there is no allegation that he did any act, after so taking the position thereon assigned to him, which in any way contributed proximately or otherwise to the accident causing his death. Cases, therefore, where the affirmative negligent act of deceased brought him in contact with a railroad train are not in point and not applicable here. This observation applies to cases such as *Lynn* v. *Goodwin*, 170 Cal. 113 [L. R. A. 1915E, 588, 148 Pac. 927], *Pope* v. *Halpern*, 193 Cal. 168, 176 [223 Pac. 470], and *Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 Pac. 259].

These views render it unnecessary to discuss the doctrine of last clear chance, nor is it necessary to discuss causes of action two and three predicated upon wilful and wanton negligence, the rule in this respect not being in doubt. The complaint states a cause of action.

Judgment reversed, with directions to court below to overrule demurrer.

Richards, J., Shenk, J., Seawell, J., Curtis, J., Waste, C. J., and Langdon, J., concurred.