**SMITH v. PENNSYLVANIA CENTRAL AIRLINES CORPORATION.**

**LUDLOW v. PENNSYLVANIA CENTRAL AIRLINES CORPORATION.**

Civ. Nos. 5145–47, 39–48.

District Court of the United States for the District of Columbia.

April 14, 1948.

Cornelius H. Doherty, of Washington, D. C., for defendant, for the motions.

Monroe Oppenheimer, of Washington, D. C., for plaintiff Evelyn C. Smith, opposed.

John H. Connaughton, of Washington, D. C., for plaintiff James H. Ludlow, opposed.

HOLTZOFF, Associate Justice.

These cases present the question whether the doctrine of res ipsa loquitur applies to an action to recover damages for wrongful death of a passenger killed in the wreck of a transport airplane operated as a common carrier.

It appears from the complaints that on June 13, 1947, the two decedents were passengers for hire, traveling from Pittsburgh,

Pennsylvania, to Washington, D. C., on an airplane operated by the defendant, Pennsylvania Central Airlines Corporation, as a common carrier. The airplane crashed into a mountain in West Virginia. The decedents died as a result of the accident. These actions are brought by Evelyn C. Smith, as executrix of Courtney M. Smith, deceased; and by James H. Ludlow, as administrator of the estate of G. A. Ludlow, deceased, to recover damages for their wrongful death.

Each complaint proceeds on two theories: first, specific negligence; and second, the doctrine of res ipsa loquitur. Paragraph 3 of each complaint alleges that the airplane wreck was caused by the negligence of the defendant. Paragraph 6 of each complaint alleges that the airplane was under the sole and exclusive management and control of the defendant, and that plaintiff is without knowledge as to the precise negligent acts or omissions causing the crash. Paragraph 6 thus seeks to invoke the doctrine of res ipsa loquitur. The defendant moves to strike a number of allegations from the complaint, but particularly presses that part of its motions which relates to paragraph 6.

■ For the sake of clarity these complaints may well have been separated into two counts: one asserting a claim on the basis of negligence without regard to res ipsa loquitur; and the other, setting forth a claim on the basis of that doctrine. It is also proper to set forth both statements in one count, federal Rules of Civil Procedure, rule 8(e)(2), 28 U.S.C.A. following section 723c. If the former course had been followed, the defendant could have tested the plaintiffs' right to invoke the doctrine of res ipsa loquitur by a motion to dismiss the count predicated on that basis, Federal Rules of Civil Procedure, Rule 12(a). In view of the fact, however, that both theories are presented in one count, a motion to dismiss would not lie, because the complaint is manifestly sufficient insofar as concerns allegations of specific negligence. It seems proper, therefore, to permit the defendant to raise this question by moving to strike from the complaint the allegations asserting a claim on the basis of res ipsa loquitur, even though the Rules do not expressly provide for the use of a motion to strike specific allegations for this purpose. Unless this course is permitted, the defendant may be without remedy at this stage of the litigation. It is obviously desirable to determine this basic question as near the inception of the actions as possible.

■ The doctrine of res ipsa loquitur lies in the field of substantive law rather than in the realm of procedure, Lachman v. Pennsylvania Greyhound Lines, 4 Cir., 160 F.2d 496. Consequently the question is one of local law and not of Federal law, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. In determining what law governs this matter, this Court must commence by ascertaining the local rules of Conflict of Laws governing this subject, Klaxon Co. v. Stentor Electric Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477. Under the law of the District of Columbia, the law of the State where the injury resulting in death is sustained governs the right to recover damages for wrongful death, Weaver v. Baltimore & O. R. Co., 21 D.C. 499, 501; Ormsby v. Chase, 290 U.S. 387, 54 S.Ct. 211, 78 L.Ed. 378, 92 A.L.R. 1499; Betts v. Southern R. Co., 71 F.2d 787, 789; Restatement, Conflict of Laws, Section 377. In view of the fact that, in this instance, the fatal accident occurred in West Virginia, the law of that State is determinative of the question whether the doctrine of res ipsa loquitur is applicable in the instant cases. Apparently this precise point has not been determined in any reported decision in West Virginia and the point is one of novel impression. It, therefore, becomes the duty of this court to ascertain the law of West Virginia on this point as a matter of principle and with the aid of such persuasive authorities as are available in the absence of any controlling ruling.

■■ The concept of res ipsa loquitur has been variously defined and explained. The prevailing view is that this doctrine under certain circumstances treats the occurrence of an accident as itself constituting evidence of negligence. It permits, although it does not compel, an inference of negligence from the event. Proof of the accident alone becomes sufficient to make out the plaintiff's prima facie case and to

shift to the defendant the burden of going forward with the evidence. The inference authorized by the rule of res ipsa loquitur must be weighed in conjunction with the evidence offered by the defendant, and does not relieve the plaintiff of the burden of proof resting on him on the entire case. The doctrine finds its principal application in cases of injuries caused by a mechanism entirely controlled by the defendant, especially if the circumstances are such that the accident would probably not have occurred but for a failure on the part of some human being.

A classic summary of this doctrine is found in Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815: "In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff."

Mr. Chief Justice Groner in Capital Transit Co. v. Jackson, 80 U.S.App.D.C. 162, 164, 149 F.2d 839, 841, 161 A.L.R. 1110, recently gave the following lucid explanation: "Some of the decisions hold that a 'presumption' arises, some a 'permissible inference,' others a 'prima facie case,' and in still others that the burden of proof is shifted to the defendant. The confusion is added to by the continued use of the words res ipsa loquitur to describe all of these rules without distinguishing among them. But whatever the result of the application of the rule in other jurisdictions, in the District of Columbia the rule is that, when res ipsa is applicable, it permits an inference of negligence and thus establishes a prima facie case, or, in other words, makes a case to be decided by a jury. But it does not shift the burden of the proof.

When all the evidence is in, the question for the jury still is whether the preponderance is with the plaintiff."

West Virginia has adopted substantially the same view of the doctrine of res ipsa loquitur. Monteleone v. Co-operative Transit Co., 128 W.Va. 340, 344, 36 S.E.2d 475, 477, contains the following statement: "There is a great deal of confusion in the decided cases touching the doctrine of res ipsa loquitur and there are two very well defined viewpoints. One is that the doctrine shifts the burden of proof and is not a rule of evidence but of substantive law; the other that it affects only the question of going forward with the evidence, and that if the defendant makes available to the court all of the information in its control touching the source of injury and places upon the stand the persons acting for it in charge of the instrumentality that caused the injury, then, if with its own evidence added, the plaintiff has been unable to prove a breach of duty his case fails. There is no doubt but that West Virginia has long been committed to the latter application of the doctrine."

Similar ideas have been expressed in many other cases, San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98, 32 S.Ct. 399, 56 L.Ed. 680; Jesionowski v. Boston & M. R. R., 329 U.S. 452, 67 S.Ct. 40; Johnson v. United States, 333 U.S. 46, 48, 68 S.Ct. 391.

The doctrine of res ipsa loquitur is peculiarly suitable to cases of death suffered, or personal injuries sustained, by passengers on common carriers. Accordingly, it is commonly invoked in connection with wrecks of railroad trains, and other railroad accidents, Gleeson v. Virginia Midland R. Co., 140 U.S. 435, 444, 11 S.Ct. 859, 35 L.Ed. 458; Jesionowski v. Boston & Maine R. Co., 329 U.S. 452, 67 S.Ct. 40; Washington A. & Mt. V. R. Co. v. Chapman, 26 App.D.C. 472, 6 Ann.Cas. 721; Hodge v. Sycamore Coal Co., 82 W.Va. 106, 109, 95 S.E. 808; Thomas v. Monongahela Valley Traction Co., 90 W.Va. 681, 687, 112 S.E. 228.

It is true that the doctrine of res ipsa loquitur has never been applied to loss of life at sea. The reason for this difference

in the law is not found in any distinction of principle, but is of a purely historical nature. The liability of common carriers for loss of life and personal injuries on the high seas is governed by the law of admiralty and not by the common law. These two systems of jurisprudence had varying origins and developed along different lines. Maritime law has always been solicitous of the interests of shipowners, as one of its purposes has been to encourage the building up of the merchant marine. Consequently, the liability of shipowners to their passengers and members of their crews, has been very much circumscribed, not only in respect to the right of recovery, but also in respect to the amount that may be recovered.[1]

The problem presented for solution in the cases at bar illustrates the capacity of the common law to grow and its adaptability to the requirements of new conditions. Its general theories and principles may be molded and rendered applicable to novel and unexpected situations. "The principle . . . does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be." [2] The bases of the doctrine of res ipsa loquitur are two fold: first, if the mechanism involved in the accident is within the sole and entire control of the defendant, the latter is in a better position than the plaintiff to adduce an explanation as to how and why the accident happened; second, if the accident is of an unusual kind, and would not ordinarily occur without failure on the part of some human agency, it is reasonable to assume in the absence of a satisfactory explanation that it was due to some negligence on the part of the defendant. These principles are as applicable to airplane crashes as they are to railroad wrecks.

That airplane crashes may occur as a result of the action of the elements, or without any carelessness or deficiencies on the part of any human being, is no doubt true. This is also probably the case in connection with railroad wrecks. It must be borne in mind that the doctrine of res ipsa loquitur does not result in a conclusive presumption of negligence nor does it even compel such an inference. It merely permits it and calls upon the defendant for an explanation. The concept of res ipsa loquitur does not impose on the defendant a liability that would not otherwise exist. If it be the fact that the defendant was not guilty of negligence, he will be free of liability. The doctrine does not even lift the burden of proof from the plaintiff and place it on the defendant. It merely calls on the defendant to offer an account of the cause of the accident. In the absence of a satisfactory explanation exculpating him, the jury may, but is not compelled to, make a finding that the disaster was caused by the defendant's negligence.

It is argued that the novelty of air navigation should preclude the application of the rule of res ipsa loquitur to airplane accidents in view of the fact that they may be due to mysterious and unknown causes. This doctrine was, however, applied to railroads as early as 1844 in Carpue v. London & Brighton Ry. Co., 5 Q.B. 747, when this mode of transportation was still in its infancy.

It is further argued that since the Civil Aeronautics Board conducts an inquiry into every aircraft disaster and embodies its findings in a public report, the plaintiff and the defendant are on a parity in respect to access to information as to the causes of such catastrophe. If this line of argument were determinative of the question at issue,

---

[1] For example, in The Passaic, 2 Cir., 204 F. 266, 267, Judge Ward, an eminent admiralty jurist, made the following observations in respect to an action to recover damages for the death of an employee of a ferryboat owned by a railroad company: "What shocks the mind is that whereas full compensation can be had in the case of employes of such a railroad company killed or injured on shore, often only a partial compensation or none at all can be had in the case of employes killed or injured on a vessel of the railroad company. Still this is the very distinction which Congress has made and for many years permitted to stand between liability of defendants generally for loss of or injury to persons or property on shore and liability of vessel owners for the same injuries."

[2] Cardozo, J., in MacPherson v. Buick Motor Co., 217 N.Y. 382, 391, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440.

it would apply equally to railroad wrecks, since they are investigated by the Interstate Commerce Commission. This circumstance, however, has never been deemed a ground for denying the application of res ipsa loquitur to railroads.

The progress of aviation has been rapid. In the course of comparatively few years, it has reached a point at which a host of transport airplanes flying according to fixed schedules over a network of permanent routes, carry thousands of passengers annually. Airplane lines vigorously compete with railroads and steamships. Those responsible for the remarkable and swift growth and development of aviation can justifiably boast of a superb record of unparalleled and rapid achievement and success. Accomplishment must be accompanied by responsibility. No reason is discernible why the principles that govern the liability of other common carriers, such as railroads, should not be equally applicable to transport airplanes operating as common carriers.

The majority of reported cases have reached the conclusion that the rule of res ipsa loquitur is applicable to accidents occurring on airplanes operated as common carriers. Thus, in Smith v. O'Donnell, 215 Cal. 714, 719, 12 P.2d 933, 935, it was stated: "There can be no doubt, under the general law of common carriers as we have found it, that those airlines which are engaged in the passenger service on regular schedules on definite routes fall within the classification. The industry itself should be desirous of assuring the public that those who accept their invitation to travel by air will be accorded that protection which may be afforded by the exercise of 'the utmost care and diligence for their safe carriage.' * * * It may safely be asserted that there is no mode of transportation where the passenger's safety is so completely entrusted to the care and skill of the carrier."

The following cases hold to the same effect: Genero v. Ewing, 176 Wash. 78, 28 P.2d 116; Smith v. Pacific-Alaska Airway, 9 Cir., 89 F.2d 253; Seaman v. Curtiss Flying Service, 231 N.Y.App.Div. 867, 247 N. Y.S. 251.

In England the same view has been expressed and applied. Thus in Fosbroke-Hobbes v. Airwork, Ltd., 1 All.E.R. 108 (1937); 1 Avi. 663, 664, is found the following illuminating discussion: "It was argued that I ought not to apply this doctrine to an aeroplane, a comparatively new means of locomotion, and one necessarily exposed to the many risks which must be encountered in flying through the air, but I cannot see that this is any reason for excluding it. Large numbers of aeroplanes are daily engaged in carrying mails and passengers all over the world, and, as is well known, they arrive and depart with the regularity of express trains. They have indeed become a common-place method of travel, supplementing, though not superseding, rail and sea transport. Railways were just as great an innovation when they took the place of the stage coach, yet the courts found no difficulty in applying to them by the year 1844 the same doctrine that had formerly been applied to stage coaches."

The same result has been reached by the courts of Ontario and Manitoba, Malone v. Trans-Canada Airlines, Ontario, 1 Avi. 1028, 1030; McInnery v. McDougall, 47 Manitoba 119, 1 Avi. 718, 721; Galer v. Wings, 47 Manitoba 281, 1 Avi. 778, 782.

There are a number of decisions in which the courts have declined to apply the doctrine of res ipsa loquitur to airplane accidents: Morrison v. LeTourneau Co., 5 Cir., 138 F.2d 339; Cohn v. United Air Lines Transfer Corporation, D.Wyo., 17 F.Supp. 865; Herndon v. Gregory, 1935, 190 Ark. 702, 81 S.W.2d 849, 82 S.W.2d 244; Wilson v. Colonial Air Transport Inc., 1932, 278 Mass. 420, 180 N.E. 212, 83 A.L.R. 329; Smith v. Whitley, 223 N.C. 534, 27 S.E.2d 442; Boulineaux v. City of Knoxville, 20 Tenn.App. 404, 99 S.W.2d 557; Budgett v. Soo Sky Ways, 64 S.D. 243, 266 S.W. 253. With the exception of Smith v. Whitley, supra, none of these cases, however, involved a common carrier. In each instance, the plane was either a private plane or was on a test flight. In Smith v. Whitley, supra, it did not appear whether the airplane was a common or private carrier.

The foregoing considerations inescapably lead to the conclusion that the doctrine of res ipsa loquitur should be deemed applicable to accidents involving airplanes operating as common carriers.

Motions to strike are denied.