[Civ. No. 3054.   Third Appellate District.—April 30, 1926.]

## BUTLER-VEITCH, INC. (a Corporation), Respondent, v. W. J. BARNARD, Appellant.

[1] FRAUD—SALES—SIMILAR REPRESENTATIONS—EVIDENCE.—In this action to recover unpaid installments on the purchase price of an automobile truck, in which the defendant filed an answer and also a cross-complaint for damages for fraudulent representations with reference to a hauling contract and payment for the truck out of net earnings, the trial court erred in refusing to permit defendant to introduce evidence of other alleged fraudulent representations by plaintiff of a character similar to those relied upon by defendant, where such evidence was tendered for the purpose of showing intent and knowledge of plaintiff and, if believed by the jury, was sufficient, together with the other evidence on behalf of defendant, to establish palpable fraud.

[2] ID.—ACTS OF OTHERS—INTENT AND KNOWLEDGE—EVIDENCE.—Fraud is an exception to the general rule that acts of others are not relevant to establish the fact; and where fraud is charged, evidence of other frauds or fraudulent representations of like character committed by the same party at or near the same time is admissible to show intent or knowledge.

[3] ID.—CIRCUMSTANTIAL EVIDENCE—LIBERAL RULINGS.—Fraud can seldom be proved by direct evidence; and in the investigation of a question of fraud courts should be exceptionally liberal in the receipt of evidence tending to disclose the true nature of the transaction, and at times very slight circumstances, apparently trivial in themselves, when joined with other facts may afford irrefragable proof of fraud.

[4] VERDICT—MOTION FOR DIRECTED VERDICT—CONSTRUCTION OF EVIDENCE.—A motion for a directed verdict is in the nature of a demurrer to the evidence and is governed by practically the same rules and concedes as true the evidence in behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom.

[5] ID.—CONCLUSIVE EVIDENCE.—A verdict should not be directed except in cases where the evidence is so conclusive that reasonable minds could not differ as to the result to be reached; and in this action, the evidence submitted by defendant in support of the allegations of his cross-complaint could not be said to be so

2.   See 12 Cal. Jur. 831; 12 R. C. L. 435.
3.   See 12 Cal. Jur. 829; 12 R. C. L. 429.
5.   See 24 Cal. Jur. 914; 26 R. C. L. 1067.

entirely devoid of fair and reasonable inferences as to warrant the granting of plaintiff's motion for a directed verdict.

[6] FRAUD—ISSUE OF FACT.—Where issues are joined on the question of fraud and the case is tried upon that theory, a question of fact arises therefrom; and, as provided by section 1574 of the Civil Code, actual fraud is always a question of fact.

[7] VERDICT—ISSUES OF FACT—INVASION OF PROVINCE OF JURY.—A direction to the jury to render a verdict on a question of fact submitted to it, where there is substantial evidence to justify a contrary decision thereon, is an invasion of the province of the jury and contrary to the constitutional provision that judges shall not charge the juries with respect to matters of fact.

(1) 27 C. J., p. 56, n. 86, p. 60, n. 65.  (2) 27 C. J., p. 57, n. 95, p. 60, n. 66, p. 61, n. 67.  (3) 27 C. J., p. 50, n. 19, 24, p. 51, n. 28, p. 52, n. 34.  (4) 38 Cyc., p. 1565, n. 76, 77, p. 1586, n. 8.  (5) 38 Cyc., p. 1565, n. 84, p. 1567, n. 97.  (6) 27 C. J., p. 72, n. 54.  (7) 38 Cyc., p. 1569, n. 6, p. 1657, n. 47, 52, p. 1659, n. 54.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge. Reversed.

The facts are stated in the opinion of the court.

W. E. Davies and Thos. W. Forsyth for Appellant.

Roy A. Bronson and Ray Manwell for Respondent.

PULLEN, J., pro tem.—This action was brought by the respondent, as plaintiff, against the defendant and appellant for a specified sum, being the installment payments due it at the date of the commencement of the action under an executory contract of sale, wherein plaintiff had agreed to sell and defendant had agreed to buy a motor truck, the total price payable in installments.

Defendant answered, admitting the execution of the contract, but alleged that at the same time and place and as a part of the same transaction and at the instance of plaintiff, and as an inducement to the defendant to enter into said contract for the purchase of the truck, defendant entered into a hauling contract with respondent and one Ma-

6. See 12 Cal. Jur. 835.
7. See 24 Cal. Jur. 916.

honey. The answer further alleged that by agreement of the parties the balance of the purchase price of the truck was to be paid from the net earnings of the truck while in the service of Mahoney, and that, without fault of defendant, the net earnings of the truck were insufficient to pay the amounts specified in the contract. As a further answer defendant interposed a cross-complaint in which it was alleged that defendant was induced to purchase the truck by the representations of plaintiff that plaintiff was interested with Mahoney, who had a contract for the hauling of a large quantity of cement, machinery, and other equipment, and also that if defendant did purchase a truck from plaintiff, that plaintiff would procure steady and profitable work for the truck during the season of 1923 with Mahoney, and that plaintiff would permit defendant to pay for the truck out of the net earnings from said hauling contract. Then followed the necessary and usual allegations that relying thereon defendant signed the agreement to purchase the truck and as a part of the same transaction signed the hauling contract with Mahoney and the allegations of tender to perform by defendant, refusal by Mahoney to furnish hauling, the falsity of the representations, and the damage sustained thereby.

Plaintiff, answering the cross-complaint, after specifically denying all the allegations thereof, alleged after defendant purchased the truck plaintiff introduced him to Mahoney and that thereafter defendant and Mahoney entered into a contract to do certain hauling, but that plaintiff was not interested in and had nothing to do with the contract whatsoever.

Upon the issues thus formed the cause was tried before a jury, and after defendant had rested his case on his cross-complaint, plaintiff moved the court for a directed verdict on the ground of failure of proof of the allegations in the cross-complaint, and on the further ground that no connection had been shown nor evidence of privity adduced between plaintiff and Mahoney, and upon the further ground that any representations made by plaintiff to defendant were mere expressions of opinion of the persons making them.

The motion was granted by the trial court upon the ground that defendant had failed as a matter of law to show

fraudulent misrepresentations and instructed the jury to return a verdict in favor of plaintiff, which was done, and upon that verdict judgment was entered accordingly, and this is an appeal from such judgment and from an order denying defendant's motion for new trial.

In support of the allegations of his cross-complaint defendant introduced evidence showing that he was a resident of San Francisco, an engineer by profession; that during the month of February, 1923, he called upon Butler-Veitch at their truck department and there talked to a salesman who told appellant "at the present they (Butler-Veitch, Inc.) had a contract with Mr. R. H. Mahoney in Marysville for hauling cement; and I (appellant) made all the inquiries regarding it and he said there would be all kinds of work this summer, and at the present R. H. Mahoney had a contract with the Yuba Development Company for hauling cement, and it was $7 a ton and allowed six tons to the load, about $42 for twelve hours, double shift $84 a day for all the work we could possibly do this season, not only that they had a contract out of Oroville and when that was finished late this fall they also had another contract at Lost Creek, that is the one that was near Oroville and the other contract was Smartsville; that the road was a very good road, as soon as they got through the dam in 1923, they were going to start on the Smartsville job and would be hauling all winter."

The day following defendant called at the office of Butler-Veitch, where he talked with the salesman who had the day before discussed the matter, and also with a Mr. Knuckey, the sales manager or manager of the truck department of Butler-Veitch, and "we went over the same grounds again in regard to buying the truck and they told me they furnished work for the truck by which I would pay all the payments and a living besides." On the following day defendant testified he went to the office of Butler-Veitch and the following occurred:

"I will ask you to look at this contract and ask you if you signed that? A. Yes, sir, also another contract I signed that day. Q. Who was present at the time you signed that contract? A. W. A. Knuckey. Q. Who else? A. Mr. D. O. Johnson. Q. When and where was that signed by you? A. This was signed by me at 1238 Market Street.

Q. Did Mr. Knuckey sign that contract in your presence?
A. Yes, sir. Q. In the office of the Butler-Veitch Company
in San Francisco? A. Yes, sir. Q. At the same time did
you sign any other papers? A. Yes, sir. Q. What papers,
if any, did you sign? A. I signed a cement hauling con-
tract by R. H. Mahoney. Q. Who signed that contract?
A. W. A. Knuckey told me he had the power of attorney
to sign for Mr. Mahoney. Q. I will ask you if you have
seen that before? A. Yes, sir. Q. Just look at the last
page and tell us if your signature appears on that contract?
A. My signature appears on that contract. Q. Who else?
A. D. O. Johnson and Mr. Knuckey; D. O. Johnson was
witness. Q. They signed that at that time? A. Yes, sir,
same time. Q. What period of time elapsed between the
signing of this contract for the purchase of the truck and
the signing of that contract for the hauling, how long did
it take? A. Maybe 2 or 3 minutes. Maybe one minute,
not longer than that. Q. You were all together there?
A. Yes, sir, we were all together there. Q. Both papers
were signed at the same time? A. Yes, sir. Q. By all the
parties present? A. Yes, sir. Q. Mr. Knuckey signed the
name of Mahoney? A. Yes, sir, he told me he had the
power of attorney to sign for Mr. Mahoney. Q. R. H. Ma-
honey, by W. A. Knuckey? A. Yes, sir. Q. Then you
signed it. A. I signed it.''

Appellant has cited some twenty-two specifications of
error, but we do not deem it necessary to comment on all
of the points urged by appellant for reversal, as an exam-
ination of the record convinces us that the judgment must
be reversed upon two of the grounds urged, namely: The
failure of the court to admit evidence of other transactions
by plaintiff of a character similar to the agreement between
plaintiff and defendant herein, and, secondly, the error of
the court in directing the jury to return a verdict in favor
of plaintiff.

[1] To show intent and knowledge of plaintiff, evidence
was tendered by defendant of other alleged fraudulent rep-
resentations by plaintiff of like character to the deal en-
tered into between plaintiff and defendant at or near the
same time. F. W. Clark was called as a witness in support
thereof and testified he purchased a truck from plaintiff
about the same time as did defendant, dealt with the same

persons, who made practically the same representations to him as to the hauling contract with Mahoney.

"(Mr. Clark) : I wanted to get more of the details of it and he (Mr. Knuckey), manager of the truck department says, 'We have this contract.' I says, 'How do you get this contract.' He says, 'You have to buy a truck from Butler-Veitch Company to enter the hauling contract.' Then he says, 'Our Mr. Mahoney at Marysville takes care of the hauling contract.' I says, 'Who is Mr. Mahoney ?' He says, 'He is the man who has charge of the cement hauling. You have to report to Mr. Mahoney after you buy the truck.' I says, 'Can I get on this job without buying a truck from Butler-Veitch,' and he says, 'Absolutely not.' "

Thereafter witness purchased a truck and proceeded to Marysville, where he reported to Mahoney. "Did you have any conversation with him (Mahoney) ? Yes, sir. I says, 'I am here to haul cement. W. A. Knuckey told me that the · cement had been ordered and shipped and would be ready to go to work on. Where is the cement?' He says, 'I don't know where in hell he got his information from.' " In about five months witness Clark testified he hauled one load only under his contract for Mahoney.

The testimony of this witness was on motion of plaintiff stricken out. Thereafter the testimony of William Cramer and D. K. Meade, witnesses called on behalf of defendant, was offered, which was substantially to the same effect as the testimony of Clark, and this testimony was, upon motion of plaintiff, also stricken out.

This testimony should have been received and submitted to the jury for their consideration, for if believed by them it was sufficient, together with the other evidence on behalf of defendant, to establish palpable fraud.

[2] Evidence tending to show similar dealings with others should have been received, for fraud is an exception to the general rule that acts of others are not relevant to establish the fact, for where fraud is charged evidence of other frauds or fraudulent representations of like character committed by the same party at or near the same time is admissible to show intent or knowledge. (*J. B. Colt Co.* v. *Freitas*, 76 Cal. App. 278 [244 Pac. 916], and cases cited.)

[3] It seldom happens that fraud can be proved by direct evidence and no rigid rule can be applied to determine

the admissibility of circumstances, so diversified are the conditions, relations, and conduct under which they arise.

"In the investigation of a question of fraud courts should be exceptionally liberal in the receipt of evidence tending to disclose the true nature of the transaction and at times very slight circumstances, apparently trivial in themselves, when joined with other facts may afford irrefragable proof of fraud." (Bigelow on Fraud, p. 160.)

From the fact of the identity of the parties making the representations, the similarity of the statements made and the proximity of time, the testimony of the witnesses Clark, Cramer, and Meade should have been submitted to the jury, and it was their province to determine, as a matter of fact, the question of knowledge of plaintiff, the relationship between Mahoney, plaintiff, and Knuckey, as well as the broad question of intent.

[4] Appellant with merit complains of the action of the trial court in granting the motion of plaintiff for a directed verdict. Such a motion is in the nature of a demurrer to the evidence and is governed by practically the same rules and concedes as true the evidence in behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom.

[5] A verdict should not be directed except in cases where the evidence is so conclusive that reasonable minds could not differ as to the result to be reached (*Paolini* v. *Fresno Canal etc. Co.*, 9 Cal. App. 1 [97 Pac. 1130]), and an examination of the evidence submitted by defendant cannot be said to be so entirely devoid of fair and reasonable inferences as to warrant the granting of the motion. In fact, the jury after receiving the direction of the trial court to find for the plaintiff returned into court and through their foreman declared that they (the jury) "voted unanimously against signing the verdict," whereupon they were again admonished by the court to follow the instructions and were sent back and thereafter returned into court with a verdict in accordance with the direction of the court finding for the plaintiff.

[6] Inasmuch, therefore, as the issues were joined on the question of fraud and the case was tried upon that theory a question of fact arose therefrom, and as provided by section 1574 of the Civil Code, actual fraud is always a

716 ELLIOTT v. VAN DELINDER. [77.Cal. App.question of fact, and such question should, we believe, have been submitted to the jury. (*Bechtold* v. *Coney*, 42 Cal. App. 563 [183 Pac. 841]; *Moore* v. *Copp*, 119 Cal. 429, [51 Pac. 630]; *Kearney* v. *Bell*, 160 Cal. 661 [117 Pac. 925].)

[7] "A direction to the jury to render a verdict on a question of fact submitted to it, where there is substantial evidence to justify a contrary decision thereon, is an invasion of the province of the jury and contrary to the constitutional provision that judges shall not charge juries with respect to matters of fact." (24 Cal. Jur. 916, citing numerous authorities.)

For the reasons stated in the foregoing, the judgment should be and is hereby reversed and the cause remanded for a new trial.

Finch, P. J., and Plummer, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 28, 1926.