[L. A. Nos. 15204 to 15211, Inclusive. In Bank.—November 29, 1935.]

THOMAS H. PARKER et al., Appellants, v. JAMES GRAN-
GER, INC., et al., Respondents; and Consolidated Cases.

Lasher B. Gallagher, Burnett Wolfson, Chotiner, Recht & Chotiner, Ford & Coles, Frank M. Benedict, Philip Cohen, A. A. Rotberg and W. Joseph Ford for Appellants.

Arthur W. Eckman, Wm. B. Himrod, Kidd, Schell & Delamer and Allen G. Mitchell for Respondents.

Hadsell, Sweet, Ingalls & Lamb, Francis Carroll, Freston & Files and Ralph E. Lewis, as *Amici Curiae* on Behalf of Respondents.

CONREY, J.—These appeals are before this court pursuant to an order granting a petition for hearing after decision by the Second District Court of Appeal, Division Two. The following statement, as we find it in the opinion written by the Court of Appeal, appears to be correct as a general statement of the facts:

"Eight separate actions were commenced by the heirs or personal representatives of persons who lost their lives in a collision between two airplanes. The cases were consolidated and tried together, and from judgments in favor of defendants these appeals are taken.

"On January 2, 1930, Fox Film Company, engaged in the business of producing motion pictures, entered into a written contract with respondent James E. Granger, Inc., to furnish one Lockheed Vega cabin plane and two 'Whirlwind planes' as camera planes, at stated prices per day, in first-class condition and with licensed pilots to operate the same, to be used under direction of Kenneth Hawks as director and Max Gold as assistant director of the Fox Film Company

in the filming of a picture showing a parachute jump over the Pacific Ocean. James E. Granger, Inc., obtained and furnished the services of a Lockheed Vega plane with Captain Roscoe Turner as lawfully licensed pilot thereof, and made arrangements to hire from Tanner Motor Livery, a corporation, also a respondent herein, two Stinson planes for use as camera planes, with licensed pilots to operate the same, agreeing to pay therefor a hire fixed in terms of dollars per hour. These planes and pilots were offered by James E. Granger, Inc., to Fox Film Company and by it approved and accepted for use in making the picture. After dual controls were installed in the Stinson planes and cameras mounted therein, and Hawks had given detailed directions as to the course of the flight and the positions of the planes when photographing was to be done, the flight of the three planes commenced. Captain Turner was pilot of the Lockheed Vega, carrying the parachute jumper; Hallock Rouse, a regular employee of Tanner Motor Livery and a lawfully licensed pilot, was pilot of one Stinson plane, with Max Gold sitting beside him at the dual control, and Ross Cook, also a regular employee of Tanner Motor Livery and a lawfully licensed pilot, was pilot of the other Stinson plane, with Hawks sitting beside him at the dual control. Neither Hawks nor Gold was a licensed pilot. Six other employees of Fox Film Company, participating in the picture making, were divided between the two Stinson planes. While flying out over the bay in a general south-westerly direction on a designated course to be followed for a distance with return thereon, the Lockheed Vega was in the lead, one Stinson to its left and rear, the other to the left and somewhat to the rear of and below the first Stinson. The Lockheed Vega allowed the two Stinsons to pass and then made a left turn to follow the return course. Thereupon the two Stinsons commenced to make a left turn, when the leading one appeared to slide sideways, the tips of the wings on the two planes touched, then their noses came together, there was an explosion and both planes fell into the ocean, carrying to their death all the occupants thereof. The foregoing is but a brief sketch of the occurrence, no effort being made to state details which are embodied in over 1000 pages of testimony and other evidence. On the evidence and under the instructions given, the jury found for defendants, respondents herein.''

The appeals are from the several judgments and from orders denying motions of the plaintiffs for judgments notwithstanding the verdicts. By its decision the District Court of Appeal held that the judgments should be reversed and that the said orders should be affirmed. In the petition of respondents for a hearing in this court they stated that the question presented by their petition related to "applicability of the doctrine of *res ipsa loquitur* in the absence of better knowledge or means of knowledge on the part of the defendant as to how the accident occurred". The petition was thus limited by reason of the fact that reversal of the judgments had been ordered solely on the ground that the trial court erroneously instructed the jury on the doctrine of *res ipsa loquitur*. But the appellants also petitioned for a hearing by this court, their petition being caused by their dissatisfaction with the opinion of the Court of Appeal, wherein it sustained an order of the trial court refusing to admit in evidence a document issued by the department of commerce of the United States containing air commerce regulations relating to the licensing of aircraft and rules of air traffic. The hearing was granted by this court primarily for the purpose of giving further consideration to the subjects thus indicated.

Quoting again from the opinion of the District Court of Appeal: "Plaintiffs herein charged defendants with negligence in general terms, and introduced proofs tending to show that the two planes which came into collision were owned by defendant Tanner Motor Livery, which was engaged in the business of renting planes with licensed pilots as a private carrier, and that through James E. Granger, Inc., the Tanner Motor Livery had hired the two planes with pilots to the Fox Film Company, employer of the deceased persons represented herein by plaintiffs, to carry such persons as passengers for hire on a picture-making trip over the Pacific Ocean and return; that the planes collided in flight, resulting in the death of all the occupants thereof, and that the planes and pilots were at the time under the control of defendants. No explanation of the cause of the collision was furnished by plaintiffs' evidence, but such evidence clearly left it doubtful as to whether or not the ultimate cause of the collision was the negligence of the defendants. Under such state of the cases it was proper to instruct the jury as to the

doctrine of *res ipsa loquitur.* (*Connor* v. *Atchison etc. Ry. Co.*, 189 Cal. 1 [207 Pac. 378, 26 A. L. R. 1462]; *Damgaard* v. *Oakland High School Dist.*, 212 Cal. 316 [298 Pac. 983].) At plaintiffs' request it gave the usual and approved form of such instructions setting forth the doctrine as defined and used in this state.''

Following such instructions, at the request of defendant Tanner Motor Livery the court gave the following instructions: (R4.) ''In order that the doctrine of *res ipsa loquitur* should apply to a given case the plaintiff must have first shown by a preponderance of the evidence that certain conditions existed, amongst these conditions are the following: 1. That the general experience of mankind shows that the accident was such that it does not usually occur in the ordinary course of events without negligence upon the part of those in control, and 2. The person against whom the doctrine is sought to be invoked must have been in control of that instrumentality, and 3. The person invoking the doctrine must not be in a position to know the cause of the accident, and 4. The person against whom the doctrine is invoked must possess or have possessed superior knowledge as to the cause of the accident or must be or have been in a better position to obtain that knowledge, so that the duty of explaining the accident should, in fairness, rest upon him on account of that greater knowledge or greater means of knowledge.''

(R8, in part.) ''The doctrine of *'res ipsa loquitur'* does not apply to any of the following situations: . . . 5. Where the defendant or his agent has not now nor has had superior knowledge or means of knowledge of the cause of the accident. In any one or all of the above cases the doctrine does not apply, and the happening of the accident raises no inference whatsoever of negligence on the part of any person, with the result that a plaintiff, to recover against a defendant, must prove by a preponderance of the evidence the actual cause of the accident and that said accident was caused by the negligence of that defendant.''

In appellants' opening brief, and appendix thereto, they referred to and copied an ''instruction R3'', in the same series as those above quoted, and they claim error in the giving of that instruction to the jury. A part of that instruction was quoted in the opinion of the Court of Appeal and used as one of the reasons for reversal of the judgments. Re-

spondents did not question the statement that such instrucsion was given and the Court of Appeal, as well as this court on petition for hearing, assumed the same fact. But now on referring to the page of the transcript where the instruction, R3, should be found, we discover that there is no such instruction at that page or anywhere else among the instructions given by the court to the jury. Our further discussion of the instructions given concerning the doctrine in question must therefore be understood to exclude any reference to said instruction R3.

 It is suggested by appellants that in the foregoing instructions the court gave to the jury the right to determine for itself whether the doctrine of *res ipsa loquitur* applied to the facts. And appellants contend that in so instructing the court committed prejudicial error. For they say that it is established by the decisions that "it is a question of law for the court to determine whether the doctrine *res ipsa loquitur* is applicable to the facts, and if it is the court must instruct the jury to apply the doctrine". We are of the opinion, however, that the court in its instructions went no further than to submit to the jury questions of fact and instruct upon the law which should apply to the facts as they might be proved and found. It may be that the court erred in saying to the jury that before the doctrine could apply to the case "the plaintiff must first have shown" that the defendant must possess or have possessed superior knowledge as to the cause of the accident or must be or have been in a better position to obtain that knowledge. But even so, in view of the fact that, as hereinafter shown, the respondent Tanner Motor Livery was not in exclusive control of the Stinson planes, it follows that there was no prejudicial error, since the doctrine *res ipsa loquitur* could not be applied without first establishing the fact of exclusive control.

 Another phase of this matter is worthy of notice. The Stinson planes, on the morning of the accident, had been thoroughly inspected and found to be in good condition. This is an undisputed fact, sufficient to reduce the question of negligence to one of negligence in the operation of the planes, or of one of them. The evidence further showed not only that the Stinson planes were to be used under direction of Hawks as director and Gold as assistant director of the Film Company, but also that in furtherance of this plan,

dual controls were installed, so that each director could sit beside one of the pilots. From these facts the jury might find, and scarcely could fail to find, that the directors were to share, directly or indirectly, in the operation of the planes. Before the flight began, Hawks gave numerous directions to the pilots. In reply to the question, inquiring what sign was to be given when the planes were to turn, Hawks said that he would give the signal, that is, he would wiggle the wings of the plane he was in. This is done by rocking the wheel back and forth. It is done by the pilot who is actually flying the plane. On the trip during which the accident occurred, when the planes left the airport Hawks and Gold were in the seats in front of which the dual controls had been installed. When the Stinson planes turned to the left, just before the accident, the higher plane side-slipped, so that they came into contact, with resulting disaster. The crucial question of fact relates to the cause of the side-slip. This question no occupant of the planes was left alive to answer, if indeed any could have answered. There is evidence that such slipping or dropping of a plane can occur through external causes and without negligence in the operation of the plane.

From the foregoing evidence the jury almost inevitably must have found that at the moment of the accident and immediately preceding that time, these planes were not in the exclusive control of respondents. In that event, the doctrine *res ipsa loquitur* could not be invoked against respondents. In effect the jury was so instructed, and was correctly so instructed.

The following paragraphs of the opinion of the District Court of Appeal are hereby approved and adopted:

■ ''After the jury was sworn and before any evidence was offered a juror voluntarily stated from the jury box that he had certain views as to the status of persons going up in airplanes in respect to right to protection, depending on whether they went up as passengers or as one who is being paid a big salary and knew what he was 'going up against'. Appellants requested leave to interpose a challenge for cause. This the court denied after interrogating the juror, who announced that notwithstanding his views of the law he would follow the instructions of the court. We find no abuse of discretion in this ruling.

■ "During presentation of their cases plaintiffs offered in evidence a document issued by the department of commerce of the United States containing air commerce regulations relating to the licensing of aircraft and rules of air traffic. The court sustained an objection to its introduction into evidence made on the grounds that the same was incompetent, irrelevant and immaterial. The ruling of the court was correct. The document offered purported to contain copies of official acts and regulations of a department of the United States. Of these the court takes judicial knowledge (sec. 1875, subd. 3, Code Civ. Proc.), and proof thereof by evidence is not required. (*Varcoe* v. *Lee*, 180 Cal. 338 [181 Pac. 223].) All questions of law and the construction of statutes and other writings are to be decided by the court; and whenever the knowledge of the court is made evidence of a fact, the court is to declare such knowledge to the jury. (Sec. 2102, Code Civ. Proc.) In charging the jury the court may state to them all matters of law which it thinks necessary (sec. 608, Code Civ. Proc.), and either party may request special instructions to be given covering any law pertinent and applicable to the case. (Sec. 609.) If the regulations offered in evidence contained law pertinent to and controlling in the case, appellants were privileged to request special instructions thereon; but no such request was made. ■ We have examined the regulations offered and find nothing therein of which the court was charged with judicial knowledge and which the court was called upon to declare to the jury. The flight of the planes herein mentioned was intrastate, and under the federal Constitution and the California Aircraft Act enacted in 1929 the state of California was vested with exclusive power to prescribe air traffic rules to govern the operation of aircraft in flying in purely intrastate flights. No such rules had been made by the legislature when the accident herein occurred, and the conduct of the pilots and others involved in the accident would be measured and judged only under the general law and rules of negligence pertinent and applicable to the case.

■ "During the trial expert witnesses were called by respondents and objections by appellants to certain questions propounded to them were overruled. The first two sought to elicit definitions of aeronautic terms and were clearly proper. The others to which objections were made were of a hypo-

thetical nature, and appellants contend they were not based in whole on facts in evidence and called for guess or conjecture rather than opinion. We have examined the same and find no error in the court's rulings which could in any degree be deemed prejudicial to appellants. The questions were predicated on assumption of facts, concerning which there was evidence, possessing supporting tendency, and were framed in accordance with respondents' theory of defense; and the questions and answers thereto were clearly in line with respondents' defenses.

"Appellants also claim error in the admission in evidence over their objection of conversations between the director Hawks, and James Granger, president of James E. Granger, Inc. We find no error in the court's rulings. The evidence elicited was clearly relevant and material to a clearer exposition of the facts touching the question of performance of the contract between the Fox Film Company and James E. Granger, Inc., and the acceptance and approval by the Fox Film Company of the arrangements for the hiring and use of the two planes and pilots made with Tanner Motor Livery.

"At the close of the evidence and after all parties had rested appellants each moved for a directed verdict in their favor, respectively, and all such motions were denied. Such motion may be made by a plaintiff where, upon the whole evidence, the cause of action alleged in the complaint is supported and no support is given to the defense or any of the defenses alleged by defendant. But such motion may not be granted where there is a conflict in the evidence of a substantial kind, relating either to the basis of plaintiff's cause of action or any defense thereto. (*Kahn* v. *National Film Corp.*, 60 Cal. App. 112 [212 Pac. 207].) To authorize the granting of such a motion the evidence must be undisputed or of such conclusive character that the court, in the exercise of a sound discretion, would be compelled to set aside a verdict returned in opposition to it. The rule is established in this state that the ruling of a trial court as to whether a given state of facts presented before it does or does not amount to negligence as a matter of law will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. (*Burgesser* v. *Bullock's*, 190 Cal. 673 [214 Pac. 649].) The same rule, of course, attaches to

the question of whether facts presented in support of a defense do or do not sustain the same. ▮ Under this rule, and after examination of the record herein, we cannot disturb the discretionary ruling of the court on the motions for directed verdicts. And for the same reasons, and based on the same foundation, we cannot disturb the court's ruling denying the subsequent motions for judgments in favor of plaintiffs notwithstanding the verdicts in favor of defendants. The foregoing conclusions apply with equal force to many specifications of insufficiency of the evidence to support various issues and defenses in the case, all of which were submitted to the jury on the evidence, which was either in conflict or of such character as to support different inferences reasonably to be based thereon.

▮ "Respondents also made a motion for a directed verdict in each case, which was likewise denied. In their reply brief herein appellants contend that it is the law that when both parties move for a directed verdict the trial court is under the duty of taking the case from the jury. In support of this contention appellants cite a note in Annotated Cases, 1913C, page 1342, wherein the following appears: 'The general rule seems to be that where both parties have requested the court to direct a verdict, and neither has asked to have any fact in issue determined by a jury, the parties will be presumed to have waived the right to a trial by jury, and to have constituted the judge a trier of questions both of law and of fact.' A rather formidable list of authorities from other jurisdictions are therein cited in support of such statement of the rule. We are of the opinion that such rule cannot be invoked and applied under the Constitution and procedure and practice in California. Trial by jury may be waived only in the manner designated in section 631 of the Code of Civil Procedure, in which request by both parties for a directed verdict is not included. It has been held in this state that a jury trial cannot be waived by implication. (*Smith* v. *Polack*, 2 Cal. 92; *Platt* v. *Havens*, 119 Cal. 244 [51 Pac. 342]; *People* v. *Metropolitan Surety Co.*, 164 Cal. 174 [128 Pac. 324, Ann. Cas. 1914B, 1181].) In *Swasey* v. *Adair*, 88 Cal. 179 [25 Pac. 1119], it was held that the right to a jury trial secured to a party under the provisions of section 592 of the Code of Civil Procedure could be waived only by such party in one of the modes prescribed in section

631 of that code. Section 7 of article I of the Constitution of this state provides that 'the right of trial by jury shall be secured to all, and remain inviolate. . . . A trial by jury may be waived . . . in civil actions by the consent of the parties, signified in such manner as may be prescribed by law.' The manner prescribed by law is that contained in section 631 of the Code of Civil Procedure. Under a practice similar to that of California, the supreme court of Illinois, in *Wolf* v. *Chicago Sign Printing Co.*, 233 Ill. 501 [84 N. E. 614, 13 Ann. Cas. 369], held that waiver of jury trial could not be had by implication, that motions for directed verdicts by both parties did not operate as a waiver of jury trial and that the rule above quoted was inapplicable to the practice in Illinois. Clearly the rule quoted is not applicable under the law and practice in California.''

Concerning the suggested point that where both of the opposing parties have requested a directed verdict they are presumed to have waived the right to have the case submitted to the jury, some additional observations may be appropriate. The several motions of plaintiffs requesting a directed verdict are in effect a demurrer to the evidence favorable to the opposing party. As was said in *Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108, 117 [291 Pac. 184]: ''Such a motion is in the nature of a demurrer to the evidence, and is governed by practically the same rules, and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. (*Butler-Veitch, Inc.*, v. *Barnard*, 77 Cal. App. 709 [247 Pac. 597].)''

In like manner the motion of the respondents for a directed verdict was an admission of the truth of the evidence on behalf of plaintiffs. Where such separate motions are made by the adverse parties their respective positions continue to be adverse and antagonistic. The position of each party is predicated upon the asserted absence either of conflicting evidence or of any evidence adverse to him and this is not because of the consensus but because of the disparity of their views in which they are diametrically opposed. The plaintiffs' assertion of the strength of their evidence cannot be construed as a confession of its weakness. Neither party concedes that if he is in error in his view as to the want of ad-

verse evidence or of the conclusiveness of the evidence in his favor, there is no conflict therein. The contrary is the only natural inference. (*Stevens* v. *Mutual Protection Fire Ins. Co.*, 84 N. H. 275 [149 Atl. 498, 69 A. L. R. 624], Supreme Court of New Hampshire.)

The orders denying the motions for judgments notwithstanding the verdicts are affirmed. The judgments are affirmed.

Thompson, J., Curtis, J., Langdon, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.