**Joseph M. TRIHEY, Administrator of the Estate of Maria G. Muna, deceased, et al., Appellant,**

v.

**TRANSOCEAN AIR LINES, Inc., a corporation, et al., Appellees.**

**No. 15446.**

United States Court of Appeals Ninth Circuit.

May 5, 1958.

A. J. Blackman, Los Angeles, Cal., for appellant.

Crider, Tilson & Ruppe, Henry E. Kappler, Los Angeles, Cal., for Transocean Air Lines.

Belcher, Kearney & Fargo, Vernon Foster, Louis E. Kearney, Los Angeles, Cal., for Douglas Aircraft Corp.

Dryden, Harrington, Horgan & Schwartz, Los Angeles, Cal., for Slick Airways.

Before FEE, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a decision of the District Court for the Central District of California in an action in admiralty for the wrongful death of three passengers lost in the crash of an airplane operated by Transocean Air Lines, Inc., a corporation (hereinafter, Transocean), over the Pacific Ocean on July 12, 1953. It arises under the Death on the High Seas Act, 46 U.S.C.A. §§ 761–768 (hereinafter, D.H.S.A.). Exclusive jurisdiction is conferred on the admiralty court. 46 U.S.C.A. §§ 761; Higa v. Transocean Airlines, 9 Cir., 1955, 230 F.2d 780. The action is against the carrier, Transocean; the maintenance contractor, Slick Airways, Inc., a corporation (hereinafter, Slick); and the manufacturer of the aircraft, Douglas Aircraft Corporation, Inc., a corporation (hereinafter, Douglas).

Plaintiff is the qualified administrator of the estates of Maria G. Muna, deceased; Francisco G. Muna, deceased; and Catalina Manalisay Guiterrez, deceased, and represented their heirs in filing this suit based on negligence. He invoked the doctrine of res ipsa loquitur. The trial judge indicated doubt if the doctrine applied and required plaintiff to present his case in full, i. e., to present all evidence of specific acts of negligence known to him. At the close of the case, by way of motion for inclusion of a statement of decision and by objections to the findings of fact and conclusions of law, plaintiff sought to obtain a clear ruling or statement from the court, stating whether the court had applied or considered applicable the doctrine of res ipsa loquitur. These several motions were denied and no clear ruling on the point was ever made.

In this case appellant strongly urges (though not exclusively) that the applicability of the doctrine of res ipsa loquitur would cure all the defects seen by the trial court in his case. We cannot agree, for under the doctrine of res ipsa loquitur, as expounded by the Supreme Court of the United States, and applicable in admiralty proceedings, while the doctrine of res ipsa loquitur permits a verdict for one in appellant's position, its application does not require it.

Appellant urges that because respondents offered no evidence to explain the cause of the aircraft plunging into the sea, they are liable. Appellant himself offered no evidence to explain the cause of the crash. He offered evidence to show what might have caused it. Defendants offered evidence to show what they knew of the aircraft's maintenance and operation. (Witnesses Carson, Buckalew, Wood, Captain Keating, and Exhibits A to M, inclusive.) The matter then rested with the trial court's conclusion as to where the preponderance of evidence lay. Findings of fact adverse to appellant, supported by conflicting evidence, were filed, as well as appropriate conclusions of law favoring all defendants. We are asked to reverse, as a matter of law.

Plaintiff's points on appeal are these:

1. Res ipsa loquitur should have been applied by the trier of fact.

2. If res ipsa loquitur was applied, it was sufficient as a matter of law for plaintiff to have judgment.

3. Even without res ipsa loquitur the clear preponderance of the evidence requires a judgment for plaintiff.

4. Errors in findings.

5. Error in failure to award plaintiffs value of baggage lost and fares paid by decedents.

Most of the "facts" are uncontradicted, but there is a substantial conflict as to their interpretation on the issue of negligence.

The plane involved was on a flight from Guam to Oakland via Wake Island and Hawaii. It crashed without radio warning of trouble approximately one hundred miles east of Wake Island some time after take-off. Bits of the plane and fourteen unidentified bodies were recovered from the ocean.

Plaintiff introduced much evidence of alleged deviations from Civil Air Regulations, the manuals of the carrier, and approved maintenance procedures; evidence of maximum use of the plane by the carrier from purchase to the time of the crash; alleged fatigued condition of the crew (out of forty-two hours from take-off the crew spent twenty-eight hours on duty, twenty-two hours aloft, and thirteen hours off duty—at Guam); evidence of allegedly faulty maintenance of the automatic pilot (—plaintiff strongly implies this was the cause of the crash—) and of No. 4 engine; and alleged poor qualifications of one of the co-pilots.

Slick was the original owner of the plane, but had sold it to Transocean in 1952. Slick was the maintenance contractor for the aircraft and had done its last maintenance work approximately three weeks before the crash. There was evidence of Slick's allegedly faulty maintenance and testing of the plane in various particulars.

As to Douglas there was no evidence introduced.

Applicability of Res Ipsa Loquitur.

We agree that res ipsa loquitur is applicable to certain aircraft crash cases. We are unable to determine from the record whether or not the trial judge applied the doctrine in this case. He originally felt it did not apply; he required the appellants to produce their evidence as to defendant's alleged negligence; he stated the applicability of the doctrine was "still open for consideration at a later date"; he permitted counsel to argue its applicability on final argument and to cite cases at final argument in support of its applicability. The court then gave judgment for defendants without disclosing whether or not he considered res ipsa loquitur applicable.

But whether or not the court applied the doctrine is not controlling on this appeal. This because, were it applied, the trial court was yet required to weigh all the evidence produced. This the court did and made findings adverse to appellants in respect to each defendant's negligence (Findings XXXIII, XXXIV, XXXV); in respect to the airworthiness of the plane and in respect to its maintenance (Findings XXXVI, XXXVII); in respect to the certification of the plane, and the fatigue of the crew (Findings XXIII, XXV, XXVI).

In other words, even if res ipsa loquitur should have been applied by the trier of fact, and was not, the application of that doctrine alone to the facts of this case is not sufficient to require a judgment as a matter of law for plaintiffs. And we cannot agree that either with or without res ipsa loquitur we are required to rule that the clear preponderance of the evidence, as a matter of law, requires a judgment for plaintiffs. The rule followed at one time that trial de novo exists in admiralty appeals is no longer the law. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Western Canada Steamship Co. v. United States, 9 Cir., 1957, 245 F.2d 921, note 2.

We have seen that an action under the "Death on the High Seas" Act is exclusively triable on the admiralty side of the court. Higa v. Transocean Airlines, supra [230 F.2d 785].

Does res ipsa loquitur apply in admiralty cases? The Supreme Court has at least impliedly so ruled in a case in admiralty where res ipsa loquitur was expressly applied without discussion of

its possible inapplicability. Johnson v. United States, 1949, 333 U.S. 46, 68 S.Ct. 391, 392, 92 L.Ed. 468, reversing 9 Cir., 160 F.2d 789. In that case, the Supreme Court granted certiorari and reversed this Court "because of the seeming misapplication by the court below of Jesionowski v. Boston & Maine R. Co., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416." Id., 333 U.S. at page 47, 68 S.Ct. at page 392.[1]

Applying the Jesionowski rule to the facts of the instant case, we first ask, were the persons whose heirs are here suing without fault? There is no evidence one way or another. We know that passengers have become crazed or drunken and attempted to wrest control of airplanes from pilots. We know that individuals have attempted suicide from airplanes and endeavored to take all occupants with them to their death. All this is possible, but certainly not probable. Nor can we presume any such interference in this case. The presumption of the exercise of due care for one's own safety, if it applies to pilots and engineers of airplanes, should with equal or greater cogency apply to passengers. In the absence of all evidence as to conduct,

we presume due care was exercised by all passengers.

We next ask, (if we assume the passengers were exercising due care for their own safety, and were therefore without fault, and died as a result of a plane disappearing without warning into the sea) whether there is the basis for a fair inference that, to paraphrase Jesionowski, "the man who dropped the plane" was negligent? If we knew that it was the *pilot* who caused the plane to dive into the sea, we think that such an inference of negligence would be a fair one. But apparently no one knows if there was pilot failure, or any human failure, connected with, or that proximately caused, the accident.

This court has applied res ipsa loquitur to a case involving the unexplained loss of an aircraft at sea. Haasman v. Pacific Alaska Air Express, D.C.D.Alaska 1951, 100 F.Supp. 1, affirmed *sub nom.* Des Marais v. Beckman, 9 Cir., 1952, 198 F.2d 550. There this Court approved the following language:

"The question presented, therefore, is whether the doctrine of res ipsa loquitur applies where the plane

---

1. This Court referred to the Jesionowski case twice in Johnson. We first said:

"The Supreme Court in Jesionowski * * * laid down the rule that courts are not to apply a 'conceptualistic interpretation' or res ipsa loquitur, and that an examination of the facts and circumstances of a particular case should be made. The Supreme Court said: 'The question here really is * * * whether the circumstances were such as to justify a finding that this derailment was a result of defendant's negligence * * *'

"We think the circumstances of this (Johnson) case are not 'such as to justify a finding that this [accident] was a result of [appellant's] negligence.'" 160 F.2d at page 793.

We later said:

"We do not think that the falling of a block during a 'rounding in' operation is an accident which is 'ordinarily the result of negligence' such as a derailment in the Jesionowski case, supra." 160 F.2d at page 794.

Mr. Justice Douglas, in discussing Jesionowski in the Johnson case, said:

"The rule of *res ipsa loquitur* applied in Jesionowski v. Boston & Maine R. Co., supra, means that 'the facts of the occurrence warrant the inference of negligence, not that they compel such an inference.' Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815 * * * [W]here as here, the injured person is not implicated, [citing Jesionowski] the falling of the block is alone sufficient basis for an inference that the man who held the block was negligent. * * *

"No act need be explicable only in terms of negligence in order for the rule of *res ipsa loquitur* to be invoked. The rule deals only with permissible inferences from unexplained events. * * * The inquiry, however, is not as to possible causes of the accident but whether a showing that petitioner was without fault and was injured by the dropping of the block is the basis for a fair inference that the man who dropped the block was negligent. We think it is, for human experience tells us that careful men do not customarily do such an act." 333 U.S. at pages 48, 49, 50, 68 S.Ct. at page 393.

disappears during flight without a trace. The defendant's contention that the doctrine is not applicable to a case such as this is based primarily on the ground that since the plane disappeared without a trace, the defendant can have no knowledge of the cause of the loss of the plane superior to that possessed by the plaintiffs.

"The rule precluding the application of the doctrine where the plaintiff's knowledge is equal to that of the defendant is stated in 65 C.J.S. Negligence § 220(5), page 1000 and 38 Am.Juris. 995, Section 299. An examination of the authorities cited in support of the rule however, discloses that it is applied to cases where the plaintiff has equal knowledge or where knowledge of the cause is equally accessible to the plainiff— not to cases in which there is an equality of ignorance as in the instant case. Since inability, because of a lack of knowledge, to show specific acts of negligence is a prerequisite to the application of the doctrine itself, it follows that equality of knowledge precludes its application. But from this it does not follow that conversely equality of ignorance will likewise preclude applicability, for the function of the doctrine, as stated in the introduction to Shain's Res Ipsa Loquitur, is to supply a fact, i. e., defendant's negligence, which must have existed in the causal chain stretching from the act or omission by the defendant to the injury suffered by the plaintiff, but which the plaintiff because of circumstances surrounding the causal chain, cannot know and cannot prove to have actually existed. I conclude, therefore, that the rule barring the application of the doctrine where there is equality of knowledge is not applicable to the case at bar. Cf. Weller v. Worstall, 50 Ohio App. 11, 197 N.E. 410, 413.

"Defendant also contends that it did not have exclusive control of the plane because of the requirements prescribed by the regulations of the Civil Aeronautics Board, in consequence of which, it is asserted, some measure of control was in the Board. This is merely confounding control of the plane with regulation by public authority. Cf. Parker v. James E. Granger, Inc., 4 Cal.2d 668, 52 P.2d 226.

"I am of the opinion that the doctrine of res ipsa loquitur is applicable and that the motion to dismiss should be denied. Seaman v. Curtiss Flying Service, 231 App.Div. 867, 247 N.Y.S. 251; Smith v. Pacific Alaska Airways, 9 Cir., 89 F.2d 253; Pacific Alaska Airways v. Mahan, 9 Cir., 89 F.2d 255. Judgment may accordingly be entered for the plaintiffs." 100 F.Supp. at page 2.

Judge Folta cited in support of the applicability of the doctrine Seaman v. Curtiss Flying Service, 1930, 231 App. Div. 867, 247 N.Y.S. 251; Smith v. Pacific Alaska Airways, 9 Cir., 1937, 89 F.2d 253; and Pacific Alaska Airways v. Mahan, 9 Cir., 1937, 89 F.2d 255.

The last two cases above were apparently not filed in admiralty, inasmuch as the earlier cases did not read the D.H.S.A. as conferring exclusive jurisdiction in admiralty. Powers v. Cunard S. S. Co., D.C.S.D.N.Y.1933, 32 F.2d 720. In the Smith case, where plaintiff proved the plane crashed and then rested, Judge Wilbur assumed without discussion that res ipsa loquitur applied, and that the applicable rule as to res ipsa appears in Gleeson v. Virginia Midland R. Co., 1891, 140 U.S. 435, 11 S.Ct. 859, 35 L.Ed. 458 and Sweeney v. Erving, 1913, 228 U. S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815. In Pacific Alaska Airways v. Mahan, supra, no question of res ipsa loquitur was discussed. In Seaman v. Curtiss Flying Service, supra, there is the bare holding that res ipsa loquitur applies to an unexplained aircraft crash which resulted in the death of a passenger.

Earlier cases, such as Smith v. Pennsylvania Central Airlines Corporation, D.C.D.C., 1948, 76 F.Supp. 940, 6 A.L.R.

2d 521, hold res ipsa loquitur applicable to aircraft crashes over land, but observe that the rule "has never been applied to loss of life at sea." Id., 943. We may accept Judge Holtzoff's conclusion as of 1948, but since then, as we have seen, the doctrine has been applied at least by this Court of Appeals to loss of life at sea. The doctrine having as "its first requirement * * * (the) basis of past experience"[2] is peculiarly one of growth ordered by quantitative experiences of mankind.

It would do little good to review the various aircrash cases many of which hold the doctrine applicable and many of which do not.[3]

In view of our conclusions hereinafter expressed, we need not meet the issue as to whether or not res ipsa loquitur is applicable to any and all aircrashes; whether applicable to aircrashes on land or in waters within territorial limits, where the doctrine is generally applicable, and not over waters outside the territorial limits of such lands; whether applicable to some aircraft crashes under the particular facts known about them and not to other aircraft crashes occurring under differing factual situations. We have heretofore held res ipsa loquitur applicable to suits on the admiralty side in certain cases, and we see no reason to change that rule.[4]

2. Prosser "Res Ipsa Loquitur in California," 37 Calif.L.Rev. 183, 191.

3. See Goldin, "The Doctrine of Res Ipsa Loquitur in Aviation Law," 18 So.Cal.L. Rev. 15, 124.

4. United States v. Johnson (Johnson v. United States), 9 Cir., 1947, 160 F.2d 789, reversed on other grounds, 1949, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468. Judge Holtzoff's analysis in Smith v. Pennsylvania Central Airlines Corp., supra, is worthy of note:

"The progress of aviation has been rapid. In the course of comparatively few years, it has reached a point at which a host of transport airplanes flying according to fixed schedules over a network of permanent routes, carry thousands of passengers annually. Airplane lines vigorously compete with railroads and steamships. Those responsible for the remarkable and swift growth and development of aviation can justifiably boast of a superb record of unparalleled and rapid achievement and success. Accomplishment must be accompanied by responsibility. No reason is discernible why the principles that govern the liability of other common carriers, such as railroads, should not be equally applicable to transport airplanes operating as common carriers.

"The majority of reported cases have reached the conclusion that the rule of res ipsa loquitur is applicable to accidents occurring on airplanes operated as common carriers. Thus, in Smith v. O'Donnell, 215 Cal. 714, 719, 12 P.2d 933, 935, it was stated: 'There can be no doubt, under the general law of common carriers as we have found it, that those airlines which are engaged in the passenger service on regular schedules on definite routes

fall within the classification. The industry itself should be desirous of assuring the public that those who accept their invitation to travel by air will be accorded that protection which may be afforded by the exercise of "the utmost care and diligence for their safe carriage." * * * It may safely be asserted that there is no mode of transportation where the passenger's safety is so completely entrusted to the care and skill of the carrier.'

"The following cases hold to the same effect: Genero v. Ewing, 176 Wash. 78, 28 P.2d 116; Smith v. Pacific Alaska Airways, 9 Cir., 89 F.2d 253; Seaman v. Curtiss Flying Service, 231 N.Y.App.Div. 867, 247 N.Y.S. 251.

"In England the same view has been expressed and applied. Thus in Fosbroke-Hobbes v. Airwork, Ltd., 1 All.E.R. 108 (1937) ; 1 Avi. 663, 664, is found the following illuminating discussion: 'It was argued that I ought not to apply this doctrine to an aeroplane, a comparatively new means of locomotion, and one necessarily exposed to the many risks which must be encountered in flying through the air, but I cannot see that this is any reason for excluding it. Large numbers of aeroplanes are daily engaged in carrying mails and passengers all over the world, and, as is well known, they arrive and depart with the regularity of express trains. They have indeed become a commonplace method of travel, supplementing, though not superseding, rail and sea transport. Railways were just as great an innovation when they took the place of the stage coach, yet the courts found no difficulty in applying to them by the year 1844 the same doctrine that had formerly been applied to stage coaches.'

"The same result has been reached by the courts of Ontario and Manitoba,

But as much difficulty is caused by the various definitions of what the rule is and what it does, as by the question as to whether it should or can be used.

Around the casual words of Baron Pollock during legal argument there has evolved a legal doctrine that has been severely criticized.[5]

Mr. Justice Groner of the United States Court of Appeals for the District of Columbia has given a quick summary of the problem (described by others as a lucid explanation) in Capital Transit Co. v. Jackson, 1945, 80 U.S.App.D.C. 162, 149 F.2d 839, 841, 161 A.L.R. 1110:

"Some of the decisions hold that a 'presumption' arises, some a 'permissible inference,' others a 'prima facie case,' and in still others that the burden of proof is shifted to the defendant. The confusion is added to by the continued use of the words *res ipsa loquitur* to describe all of these rules without distinguishing among them. But whatever the result of the application of the rule in other jurisdictions, in the District of Columbia the rule is that, when *res ipsa* is applicable, it permits an inference of negligence and thus establishes a prima facie case, or, in other words, makes a case to be decided by a jury. But it does not shift the burden of the proof. When all the evidence is in, the question for the jury still is whether the preponderance is with the plaintiff."

This view of what res ipsa loquitur is, and what it does, follows the Supreme Court definition. Sweeney v. Erving, supra, " * * * cut through the mass of verbiage built up around the doctrine of res ipsa loquitur." Jesionowski v. Boston & Maine R. Co., supra, at page 457 of 329 U.S., at page 404 of 67 S.Ct. "The rule deals only with permissible inferences from unexplained events." Johnson v. United States, supra, at page 49 of 333 U.S., at page 393 of 68 S.Ct. "When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff." Sweeney v. Erving, supra, at page 240 of 228 U.S., at page 418 of 33 S.Ct.

In the instant case there was no jury. The trier of facts was the trial judge. Whether or not he considered the doctrine of res ipsa loquitur helpful and therefore applied it, we do not know, but whether he did or did not, he heard the evidence produced by each side and found the preponderance favored the defendants. We cannot say as a matter of law that had the rule been relevant and applicable here it could by itself require or sustain a verdict for plaintiff.

Malone v. Trans-Canada Airlines, Ontario, 1 Avi. 1028, 1030; McInnery v. McDougall, 47 Manitoba 119, 1 Avi. 718, 721; Galer v. Wings, 47 Manitoba 281, 1 Avi. 778, 782.

"There are a number of decisions in which the courts have declined to apply the doctrine of res ipsa loquitur to airplane accidents: Morrison v. Le Tourneau Co., 5 Cir., 138 F.2d 339; Cohn v. United Air Lines Transport Corporation, D.C.D.Wyo., 17 F.Supp. 865; Herndon v. Gregory, 1935, 190 Ark. 702, 81 S.W.2d 849, 82 S.W.2d 244; Wilson v. Colonial Air Transport, Inc., 1932, 278 Mass. 420, 180 N.E. 212, 83 A.L.R. 329; Smith v. Whitley, 223 N.C. 534, 27 S.E.2d 442; Boulineaux v. City of Knoxville, 20 Tenn. App. 404, 99 S.W.2d 557; Budgett v. Soo Sky Ways, 64 S.D. 243, 266 N.W. 253.

"With the exception of Smith v. Whitley, supra, none of these cases, however, involved a common carrier. In each instance, the plane was either a private plane or was on a test flight. In Smith v. Whitley, supra, it did not appear whether the airplane was a common or private carrier.

"The foregoing considerations inescapably lead to the conclusion that the doctrine of res ipsa loquitur should be deemed applicable to accidents involving airplanes operating as common carriers." 76 F. Supp. at page 495.

5. See Morris, "Res Ipsa Loquitur—Liability Without Fault." 25 Ins. Counsel Journal 97, quoting: "It adds nothing to the law, has no meaning which is not more clearly expressed for us in English, and brings confusion to our legal discussions. It does not represent a doctrine, is not a legal maxim, and is not a rule." Dissenting opinion of Bond, C. J., Potomac Edison Co. v. Johnson, 1930, 160 Md. 33, 152 A. 633, 636.

■ ■ The facts of an unexplained crash into the ocean may warrant an inference of negligence, but do not compel that inference.[6] Nor can we try the case *de novo*. Our duty is to see that the trial court's conclusion as to the facts was not clearly erroneous. Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A. We are satisfied here that it was not clearly erroneous.

We do not meet the problem of whether the essential of exclusive control of the instrumentality involved was proved to the satisfaction of the trial court,[7] nor whether the airline operator can by the use of independent contractors delegate his duty of adequate maintenance of the plane. Cf. De Vito v. United Air Lines, Inc., D.C.E.D.N.Y.1951, 98 F.Supp. 88.

What we have said above disposes of appellant's fourth point, that the District Court erred in various findings. We come to appellant's fifth and last claimed error, the failure of the trial court to make findings disposing of appellant's claims for loss of baggage and refund of fares paid.

■ Appellant urges that only one cause of action exists for *all* pecuniary loss, which includes cost of transportation paid and the value of baggage lost. Appellees urge that this is solely a death statute and the pecuniary loss must be sustained by the persons for whose benefit the suit is brought. Appellant cites no cases; appellees but one, denying recovery of funeral expenses (The Culberson, 3 Cir., 1932, 61 F.2d 194). The right of plaintiff to sue here depends on statute. The statutory right is for the benefit of those named by statute— wife, husband, minor child, or dependent relative. These may or may not be the beneficiaries of decedent's estate. Any recovery of fare paid, or baggage lost, would inure only to the benefit of decedent's estate—not necessarily to those whom the statute specifies. We find no cases directly in point. Were it essential in this case, we could conclude that the personal representative, suing only under the D.H.S.A., has no cause of action for funeral expenses, fare paid, or baggage lost. But in view of the lower court's finding of no liability, which we do not disturb, the failure to find on this issue cannot be substantial or prejudicial error.

■ We have considered above the liability of the carrier, Transocean Air Lines, Inc. In considering the liability of Slick, we meet head on the issue touched upon above (see note 7)—"exclusive control," and the divided responsibility of Slick Airways, Inc. and Transocean for the proper maintenance of the plane. There seems little question but that on this record we could not hold as a matter of law that Slick had exclusive control over the plane so as to render res ipsa loquitur applicable. To consider holding Slick liable would at least require some proof that a failure to maintain the plane in proper mechanical condition was a proximate cause of the crash. This factual issue has been decided by the trial court adversely to appellant.

■ In considering whether the trial court was "clearly erroneous" in the conclusions to which it came upon weighing all the evidence, we must keep in mind that every inference and intendment favors the position of appellees. We cannot re-examine or re-weigh the evidence, but this is what appellant would have us do with respect to the disputed matters of pilot training, pilot fatigue, and, most particularly, auto pilot maintenance and malfunction.

---

6. Cf. Danner v. Atkins, 1956, 47 Cal.2d 327, 303 P.2d 724; Druzanich v. Criley, 1942, 19 Cal.2d 439, 444, 122 P.2d 53, 55.

7. Prosser, Torts 43 (2 ed. 1955).
   "Negligence may be proved by circumstantial evidence. One type of circumstantial evidence to which the courts have given the name res ipsa loquitur, arises where

   (a) the accident is of a kind which ordinarily does not occur in the absence of someone's negligence, and

   (b) it is caused by an instrumentality within the exclusive control of the defendant, and

   (c) the possibility of contributing conduct which would make the plaintiff (patient) responsible is eliminated."

Finally, we are asked to find the manufacturer of the plane, Douglas Aircraft Corporation, Inc., liable. This position is not seriously urged by appellant. The trier of fact found no negligence existed on the part of Douglas, and we agree there was none.

The judgment is affirmed as to all defendants.