No. 33,004

J. T. RYAN, *Appellee*, v. N. D. HARWOOD and HURST MAJORS, *Appellants*.

(65 P. 2d 277)

Opinion filed March 6, 1937.

*Ira Snyder* and *Roy Lathrop,* both of Manhattan, for the appellants.
*Hal E. Harlan* and *A. M. Johnston,* both of Manhattan, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by two of the three defendants from the adverse rulings of the trial court during the introduction of the evidence and from the order of the trial court in directing a verdict for plaintiff.

The plaintiff's cause of action was to recover from the three defendants the value of seven truck loads of corn—739⁵⁶⁄₆₆ bushels, at 90 cents per bushel, or $665.97—frequent reference being made to this corn as being a carload, the greater part of which was alleged to have been sold by plaintiff to the defendants.

Separate answers were filed by defendants, N. D. Harwood and Hurst Majors, which are substantially alike. No answer was filed by the other defendant, D. C. Stephenson, although he was personally served with summons. The answers of the two defendants are first a general denial, an admission that the three defendants comprised a partnership engaged in the business of fattening hogs for market. That prior to July 1, 1934, D. C. Stephenson was engaged in that business alone, but after that date the other two defendants joined him in that enterprise. That plaintiff was assistant cashier of the First National Bank in Manhattan, of which W. D. Womer was president, and the answers further allege, as abbreviated by the attorneys for the two defendants, in their brief as follows:

"That about September 24 Stephenson informed Majors and Harwood that he had no more funds, and through the agency of W. D. Womer and J. T. Ryan, got Harwood to endorse a note for $4,000, so that with the help of W. D. Womer and J. T. Ryan the $4,000 was secured from A. C. Benedict. That the note was delivered to Benedict with the agreement that all the proceeds were to be impounded in the hands of J. T. Ryan as trustee and used only for the purpose of buying feed for the said hogs.

"That Benedict, according to agreement, at once paid Ryan $2,000, which Ryan at once credited to the account of Fielding and Stephenson, dealers in corn and other grains, all without the knowledge or consent of either Harwood or Majors, and used it to settle overdrafts of Fielding and Stephenson due the bank, one of which drafts was for a car of corn of 1,500 bushels [a different carload], sold by plaintiff Ryan to the partnership for $1,147.80, of which the partnership received only 744 bushels, the rest having been already sold to other parties; that Ryan, Womer and Stephenson were partners in the sale of this car of corn and that all three as such knew and approved of the conversion of the $1,147.80 of funds that belonged to the hog partnership for a car of corn, less than half of which was ever delivered.

"That Stephenson sold $2,500 worth of hogs; and that the $2,500 and the

$4,000 secured from the Benedict note was all appropriated by Ryan, Womer and D. C. Stephenson as partners in defrauding Majors and Harwood, and that they have never accounted to either of them for any part of the same.

"That any corn ever furnished by Ryan to the partnership was paid for out of the proceeds of the Benedict note."

The plaintiff by way of reply, duly verified, denied generally the allegations of the separate answers and specifically denied the existence of any partnership between himself and Stephenson, Womer and Fielding or any of them for any purpose, and denied that the bank or Fielding and Stephenson were his agents or representatives in any of the matters mentioned in the answers, and further denied that he ever received any of the proceeds of the Benedict loan or from the sale of any of the hogs.

The plaintiff's evidence tended to show the delivery of seven loads of corn to the hog ranch of defendants by Stephenson, a member of the elevator firm of Fielding and Stephenson, where the plaintiff's carload of corn was stored, and an admission by Stephenson as to receiving and using the same at the hog ranch. There was also evidence of the weight of the seven loads and the price of same per bushel. The evidence in defense began with the facts about the Benedict loan, and Benedict was asked if he had made arrangements with Womer, Stephenson and the First National Bank as to how the loan money was to be disbursed. The court sustained an objection to this question covering the usual points in such an objection and that it was not within the issues. The defendants then made the following offer:

"The defendant offers to prove by the witness on the stand that before he would make this loan he told Mr. Womer and Mr. Stephenson that he would not make the loan unless Stephenson and the First National Bank would see that the money derived from the loan should be impounded and used only for the purpose of corn and feed for said hogs, and if hogs were sold from the lot they to be applied upon a morgtage which the witness required to be executed upon the hogs and the carload of corn; and that the mortgage was to cover all corn purchased in the future with the money; and this agreement was made in the presence of D. C. Stpehenson with Womer, the president of the First National Bank."

Another offer was later made after the sustaining of an objection to a question, which offer was as follows:

"The defendant offers to prove by the witness on the stand that the plaintiff, Ryan, received $1,147.80 on or about the 25th day of September, 1934, for a certain car of about 1,500 bushels of corn stored in the Blue Valley Feed Store, which he then claimed to own, and which he said he sold to the hog

partnership; that the plaintiff never delivered said corn to the hog partnership, by reason of which he is indebted to the hog partnership in a sum of money equal to the amount claimed by the plaintiff, and which the defendant at this time seeks to use as a setoff against the plaintiff's claim in this action."

Another offer was made between these two which was allowed but held to be a departure from the pleadings and excluded on that account. In a colloquy between the court and counsel as to these rulings and the reasons therefor the defendants elected to make their claim as to the payment for another carload of corn against Ryan alone, instead of him and others, and also asserted their desire to maintain a claim of payment and offset after the rejection of evidence as being a departure. But the record does not show the making of any amendments to the answers. There can be no question but that this second offer as to dealings with plaintiff alone was not within the issues and without an amendment of the answers was not admissible.

It was held in *Newby v. Meyers*, 44 Kan. 477, 24 Pac. 971:

"The evidence in a case must correspond with the allegations of the pleadings, and be confined to that point or points in issue." (Syl. ¶ 1.) (See, also, *K. P. & W. Rld. Co. v. Quinn*, 45 Kan. 477, 25 Pac. 1068; and *Randall v. Oliver*, 122 Kan. 601, 253 Pac. 546.)

Although the answers contained a general denial of plaintiff's claim, the evidence offered by the defendants did not conflict with the evidence of the plaintiff as to the delivery and value of the seven loads of corn. So the plaintiff, under the evidence, was entitled to recover unless the evidence in support of the defenses set up in the answers of the defendants would in some way meet such claim or prevent such recovery. Benedict testified for defendants about making defendants the $4,000 loan, about his conversations concerning the same with Stephenson and Womer and that the latter said the note would be good if it was signed by Harwood, and that later he paid $1,305 to Stephenson to pay for a car of corn and about it being turned over to a Mr. Good at the bank. Defendant Harwood testified as follows:

"I am a member of this hog partnership. I talked with Ryan after the 25th day of September, 1934, regarding certain car of corn that was stored in the Blue Valley Feed Store. Mr. Ryan discussed with me a car of corn that he had sold to the partnership. That car had approximately 1,500 bushels. He said he received the money from the Benedict loan for this car of corn."

The defendants rested after the taking of the evidence of these two witnesses and making the offers above mentioned, and on mo-

tion of plaintiff the trial court directed a verdict for plaintiff and rendered judgment thereon after overruling the motion of defendants for a new trial.

The defendants in their appeal assign the following errors:

"1. The court erred in directing a verdict for plaintiff.

"2. The court erred in refusing to permit the witness Benedict to testify that before he would make the $4,000 loan, Stephenson and the First National Bank must agree that the money was to be impounded and used only for corn and feed for the hogs.

"3. The court erred in ruling that defendants could not claim that Ryan owned the car of corn in the Blue Valley Store, and at the same time be a partner with Womer and Stephenson in defrauding Harwood and Majors.

"4. The court erred in ruling that the issue of whether or not Ryan got the price of the car of corn and converted it, yet did not deliver the corn, could not be settled without Womer and Fielding as parties.

"5. The court erred in ruling that defendants could not show that Ryan appropriated their money by agent but must show that he did it in person.

"6. The court erred in holding defendants to the strict order of proof in their attempt to prove fraud.

"7. The court erred in rejecting defendants' offer of proof that 'the plaintiff, acting for himself, and with full knowledge of all the facts, appropriated to himself $1,147.80 of the money belonging to the hog partnership and sold for said money about 1,500 bushels of corn then stored in the Blue Valley Feed Store in Manhattan, Kansas, which corn plaintiff never delivered to the hog partnership.'

"8. The court erred in deciding as a matter of fact from the evidence that Stephenson was at all times acting as a partner of Harwood and Majors and never as a partner in fraud of Ryan and Womer."

The first error assigned is that of directing a verdict for plaintiff. The contention of appellants is correct that the court should never direct a verdict where there is a conflict of testimony or where there is some evidence to support the defense. (*Gould v. Stewart,* 103 Kan. 847, 176 Pac. 630.) We have already concluded there was no conflict as to the evidence introduced by plaintiff. Was there some evidence to support the defense? On account of this very question we have herein set out substantially all the evidence of the two witnesses used by the defendants and the two offers that were rejected. The defendants maintain that there was ample evidence to go to the jury as to whether Stephenson dealt with this corn as a partner of Ryan, buying it with partnership money taken from the hog partnership, feeding it to the partnership hogs with a plan to sell them and appropriate the whole proceeds to Ryan, Womer and himself, or whether he acted as a partner of Harwood and Majors, and whether or not Ryan and Stephenson were partners in the car of

corn, and whether delivery of the corn to Stephenson for the hogs was delivery of the corn to the Ryan-Stephenson-Womer partnership to beat the hog partnership, or delivery to the Harwood-Stephenson-Majors partnership for legitimate purposes. We cannot concur in this view of the evidence of the defendants, and we think the defendants entirely failed to establish any of the grounds of their defense and therefore it was not error to direct a verdict for plaintiff. (*Hillis v. National Bank,* 54 Kan. 421, 38 Pac. 565; *Firstenberger v. McBee,* 113 Kan. 110, 213 Pac. 813; and *Bank v. Myrick,* 108 Kan. 191, 194 Pac. 648.)

The exclusion of the evidence for which the first offer was promptly made had to do with an agreement between Benedict and Womer, president of the bank, which facts could not in any way bind Ryan, the plaintiff. The last offer made by defendants concerned the other carload of corn and the money received by plaintiff individually therefor, which defendants desired to use as a setoff against the plaintiff's claim. The trial court rejected the offer because it would constitute a departure from the issues framed by the pleadings. We think both these rulings were correct.

Counsel for the appellants cite *Burkhardt v. Garden City Sugar and Land Co.,* 119 Kan. 54, 237 Pac. 1024, but in that case there was no issue as to agency nor any question of departure from the issues made by the pleadings.

All the remaining assignments of error grow out of the rulings of the trial court in sustaining the objections made to questions asked and rejecting offers of evidence in the instances above cited. All the evidence we have thereon or the trial court had before it upon the hearing of the motion for a new trial is and was the offers made and above considered. G. S. 1935, 60-3004, requires all such rejected evidence to be produced at the hearing of the motion for a new trial by affidavit, deposition or oral testimony of witnesses. Under this situation we must hold there was no error in the overruling of the motion for a new trial.

In the case of *Mohr v. Women's Benefit Ass'n,* 134 Kan. 311, 5 P. 2d 789, it was held:

"When the ground of a motion for new trial is the exclusion of evidence the excluded evidence must be produced at the hearing of the motion for a new trial." (Syl.)

The judgment is affirmed.