No. 35,899

Guy A. Thompson, Trustee of the Missouri Pacific Railroad Company, *Appellant*, v. F. J. Richards, *Appellee*.

(146 P. 2d 359)

Opinion filed March 4, 1944.

*Ralph M. Hope,* of Atchison, argued the cause, and *W. P. Waggener, O. P. May* and *B. P. Waggener,* all of Atchison, and *R. L. Hamilton,* of Beloit, were on briefs for the appellant.

*Ralph H. Noah,* of Beloit, argued the cause for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action by a rail carrier to recover an undercharge on an interstate freight shipment. The defendant prevailed and the plaintiff appeals.

Three carloads of sheep were loaded at Eagle, Colo., freight prepaid to Tennessee Pass, Colo., where they were unloaded and put on pasture for several months. From Tennessee Pass they were shipped to the Denver market, where they were purchased by appellee, F. J. Richards, and consigned to him at Scottsville, Kan. Under a

provision of the tariff rules which permits sale in transit they were moved to Scottsville on a through bill of lading from Tennessee Pass. The consignee, who was liable for all unpaid freight, thus received the benefit of the through rate which was considerably lower than a combination of the local rates from Tennessee Pass to Denver and from Denver to Scottsville.

When the sheep reached Scottsville the local agent of the carrier did not know how to compute the total freight charges, but after some inquiry advised the appellee that the correct rate was 48 cents a hundred pounds. On December 2, 1939, the appellee paid the freight bill of $360.30 computed at the 48-cent rate, and the agent marked the freight bills "Paid in full." Subsequently the carrier advised the consignee that a mistake had been made, that the correct, published rate was 60 cents a hundred, and made demand for $90.09, the balance alleged to be due under the correct rate. There is no controversy as to the weight of the shipment or as to the mathematical computations. Relying upon the fact that he had paid the amount of freight originally charged and had been given a receipt in full, the consignee refused to pay the amount demanded and this action to collect the alleged undercharge of $90.09 followed. The answer was in substance a general denial.

Trial was had before a jury in January, 1943. At the close of the evidence the plaintiff demurred to the defendant's evidence on the ground that it stated no defense to the cause of action and moved for a directed verdict. The demurrer and the motion were overruled.

The jury brought in a general verdict for the defendant and answered special questions as follows:

"1. What do you find was the correct rate per hundred pounds for the shipment involved herein from Tennessee Pass, Colorado, to Scottsville, Kansas? A. We don't know.

"2. What do you find was the rate per hundred pounds which was collected from the defendant for the shipment involved herein from Tennessee Pass, Colorado, to Scottsville, Kansas? A. 48¢.

"3. What was the weight of the sheep shipped? A. 75,063 pounds."

The plaintiff asked that the jury be required to go out again and bring in a definite answer to the first question. The motion was denied. Motion for a new trial was made and overruled, and this appeal followed. Appellant's principal contention is that the court erred in overruling the demurrer and the motion for a directed verdict.

Before considering the appeal on its merits we note that appellee renews his contention—heretofore made in a motion to dismiss, which was overruled—that the appeal should be dismissed because less than $100 is involved. The contention is not good. The freight shipment was interstate in character. Laws of the United States being involved this court has jurisdiction to entertain the appeal, regardless of the amount plaintiff seeks to recover. (G. S. 1935, 60-3303, *Thomas v. Chicago, B. & Q. Rld. Co.*, 127 Kan. 326, 329 and cases there cited, 273 Pac. 451; 2 Am. Jur., §§ 38-40; 4 C. J. S., pp. 141-144.)

The only freight charge that may lawfully be collected is the one computed in conformity with the freight tariffs duly published and filed as required by law. It is provided in the Interstate Commerce Act (U. S. C. A. Title 49, § 6, ¶ [7]) that:

"No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

There being only one lawful charge the carrier has no option in the matter. In case of undercharge the carrier must take steps to collect the balance due, and failure to do so subjects it to severe penalities. It is well settled that neither the good faith of the parties when the erroneous charge was made nor the giving of a receipt "in full" is a defense in an action to recover on the undercharge. (*Pittsburg, C. C. & St. L. R. Co. v. Fink*, 250 U. S. 577, 63 L. Ed. 1151; *N. Y. Central v. York & Whitney Co.*, 256 U. S. 406, 65 L. Ed. 1016; 83 A. L. R. 245, 268; *Railway Co. v. Wagner*, 102 Kan. 817, 172 Pac. 519; *Farrar v. Perkins*, 122 Kan. 141, 251 Pac. 440.)

In cases such as here presented this rule may seem a harsh one, but any other rule would open the door to evasion of the law and bring back the old practice of rebates, preferences and discriminations under which fair competition was stifled and artificial economic advantage given to favored localities and sections of the

country. To put an end to that sort of thing was the primary purpose behind the enactment of the Interstate Commerce Act.

There was no dispute, in the instant case, as to the amount paid by the consignee, nor as to the facts and circumstances incident thereto. There remained only one primary fact to be determined. What was the correct rate? That fact being determined, the amount to be collected would follow as a mere mathematical computation. The plaintiff put on the stand as an expert witness a man who had been an employee of the company for forty-two years, an employee in the rate department since 1905 and an assistant general freight agent for fourteen years. He introduced various exhibits relating to rates and charges and testified, repeatedly and unequivocally, that the correct and lawful rate on the shipment was 60 cents a hundred.

The defendant was permitted, over the objection of plaintiff, to introduce evidence as to the rate between Denver and Scottsville, as to rates applicable on different routings and as to charges collected on other shipments. None of this was competent and should have been excluded. The only issue was as to the correct and lawful rate on the shipment involved, between Tennessee Pass and Scottsville. The defendant offered no testimony on that issue and plaintiff's evidence that the correct rate was 60 cents a hundred stood unchallenged.

Defendant's evidence consisted of a recital of facts and circumstances incident to the shipment and the submission of copies of correspondence with the plaintiff subsequent to the shipment, and of the freight bills covering the shipment showing a notation by the local agent that the charges had been paid in full. There was nothing in this evidence which constituted any defense to the cause of action established prima facie, by the plaintiff. Plaintiff's demurrer to defendant's evidence should have been sustained.

If the demurrer to defendant's evidence had been sustained was the plaintiff then entitled to a directed verdict? The plaintiff's witness had testified that the correct rate was 60 cents. That testimony stood uncontradicted. The rate determined the amount due. We are well aware of the rule that a verdict should not be directed where there is any conflict of evidence on a material question of fact. But we think the situation here presented brings it within the other rule that where the evidence reasonably admits of only one conclusion and clearly shows the right of the plaintiff to a verdict, a motion for a directed verdict should be sustained. (26 R. C. L.

1073; 64 C. J. 459, 469; *Ryan v. Harwood,* 145 Kan. 267, 65 P. 2d 277; *Furst v. De Witt,* 145 Kan. 300, 305, 65 P. 2d 567. In *White v. Village of Soda Springs,* 46 Idaho 153, 266 Pac. 795, syllabus 4 reads: "Failure of defendant to offer any evidence partakes of the nature of demurrer to plaintiff's evidence." That may be, however, a somewhat extreme statement of the rule.)

We conclude that there remained no issue of fact which would justify submitting the case-to the jury and that plaintiff was entitled to judgment.

The judgment is reversed with directions to sustain plaintiff's motion for a directed verdict for the amount prayed for.

HOCH, J. (dissenting): I agree generally with the statements of law contained in the majority opinion, but on the record before us I cannot concur in the disposition made of the case. To the question as to what was the correct and lawful rate on the shipment the jury answered "We don't know." After carefully considering the expert's testimony and the exhibits which he introduced I have no trouble in understanding why the jury made that answer. And surely the appellant must be sympathetic with the jury's difficulty, for it now frankly admits that its expert witness was wrong. In its brief appellant says:

"Although, as indicated, Dunham's explanation of the exhibits showing the tariff is to the effect that they call for a 60-cent rate, we have discovered since the trial that the copies of the tariffs set forth by *those exhibits justify only a rate of 59¾ cents per hundred pounds.* This apparently occurred as a result of the witness misreading one of the tariffs. The witness testified that the five percent increase allowed by No. X-123 upon the 50 cents prescribed by Item 630 of Exhibit 1 and upon the 3 cents differential prescribed by Item 640 of Exhibit 1 amounted to 3½ cents. However, the copy of No. X-123 introduced in evidence shows that the increase on the 50-cent item is 3 cents and the increase on the 3-cent item is ¼ cent, or a total increase of 3¼ cents. The witness apparently made a mistake on the witness stand in reading Table I of Exhibit 5. . . . The result is the correct rate as shown by the tariff itself is only 59¾ cents and we are not now contending that it should be 60 cents." (Italics supplied.)

Nor is that all. In explaining how he arrived at 60 cents plaintiff's witness testified that the basic rate was 50 cents; that to the basic rate there was to be added 3 cents—a "differential" given as an "arbitrary" to roads operating in mountain territory; that to the total of 53 cents was to be added a five percent increase authorized under a tariff designated "No. X-123," and lastly, that there should

then be added another differential of 3½ cents. He said that all that added up to 60 cents. But with reference to the five percent increase he testified as follows on direct examination:

"Q. (By Mr. Hope) Now if you will answer as to what the amount of the increase is as provided by the tariff from which you are reading? A. *On livestock it is 5 per cent.*

"Q. 5 per cent? A. That is right.

. . . . . . . . . . . . .

"Q. Now applying that 5 per cent rate to this shipment how much addition would the increase be per hundred pounds? A. *It would be 5 per cent on 53 cents.*

"Q. The 53 cents that you previously testified to this morning that you arrived at before you were authorized under the tariff to add 5 per cent? A. That is right.

"Q. And that is 3-½ cents? A. That is right." (Italics supplied.)

The obvious trouble with this testimony is that five percent of 53 is not 3½, but is 2.65. And appellant now says that if we discard the expert's testimony and examine the exhibits we discover that "No. X-123" does not provide for five percent upon a 53 cent rate nor for 3½ cents, but provides an increase of 3¼ cents. Appellant may interpret the exhibits correctly; though I find considerable difficulty—even discarding the expert's testimony—in harmonizing the figures and the rules shown on the exhibits and arriving, with certainty, at 59¾ cents as the correct rate. Be that as it may I do not think we should attempt to determine that question of fact.

It follows from what already has been said that I cannot concur in the majority view that the plaintiff was entitled to a verdict. Where there is any doubt or room for doubt, verdict should not be directed. (64 C. J. 475 *et seq.*) And, of course, it is not for the court to weigh evidence, upon motion for a directed verdict. (64 C. J. 449.) Nor is the mere fact that the evidence is uncontradicted ordinarily sufficient to warrant the court in directing a verdict. (64 C. J. 471 and cases cited.) To justify the granting of a plaintiff's motion for a directed verdict the evidence should be of such conclusive character that the court would be compelled to set aside a verdict returned in opposition to it. (*Parker v. Granger, Inc.,* 4 Cal. 2d, 668, 52 P. 2d 226.)

How can it fairly be said that 60 cents stood unchallenged as the correct rate and that there remained no room for doubt? As heretofore noted, it was challenged by the inconsistency or inaccuracy in the expert's own testimony. And if appellant is correct in its

present interpretation, it was clearly challenged by the exhibits themselves.

The burden was upon the plaintiff to establish the correct rate. The jury found, in effect, that it had not done so. In my opinion, this requires affirmance of the judgment unless appellant was entitled to a new trial.

I agree with the majority view that evidence offered by defendant, and admitted over plaintiff's objections, as to the freight collected on other shipments between other points, and as to the correct rate over other routes, was incompetent and should have been excluded. It did not prove or tend to prove any fact material to the issues to be determined. In my opinion it was prejudicial—particularly the testimony as to the rate paid on other shipments which involved freight charges from Denver to Scottsville. It is true that appellee bought the sheep, in this instance, on the Denver market. But the shipment was not moving on a billing from Denver, but from Tennessee Pass. The consignee was clearly liable for the charges based on the through rate from Tennessee Pass. Appellant not only objected to the above testimony but asked an instruction—which was refused—to the effect that the freight charge from Denver to Scottsville was not an issue and should not be considered. I think the case should be sent back with direction to sustain the motion for a new trial.

This issue is larger than the comparatively small amount in controversy. For the sound reasons stated in the majority opinion there is only one rate which may lawfully be collected. It seems hard enough, under all the circumstances, to hold the appellee liable for the undercharge, although the law is clear—and was clear when the action was brought—that there is no way to avoid it. But if the carrier's present contention is correct we are now directing him to pay *more* than the lawful rate. And certainly it is as unlawful to collect too much—however slight the excess—as it is to collect too little.

SMITH and WEDELL, JJ., join in the foregoing dissenting opinion.